75 N.Y.2d 175 (1990)
Motor Vehicle Manufacturers Association of the United States, Inc., et al., Appellants,
v.
State of New York et al., Respondents.
Court of Appeals of the State of New York.
Argued November 14, 1989.
Decided January 18, 1990.
William R. Stein, Philip A. Lacovara, Ross Lipman, David Madoff, William H. Crabtree, Charles H. Lockwood, II, and John T. Whatley for appellants.
Robert Abrams, Attorney-General (Thomas G. Conway, O. Peter Sherwood, Peter H. Schiff and Rachel Kretser of counsel), for respondents.
Chief Judge WACHTLER and Judges KAYE, ALEXANDER, HANCOCK, JR., and BELLACOSA concur with Judge SIMONS; Judge TITONE dissents and votes to reverse in a separate opinion.
*179 SIMONS, J.
Plaintiffs, trade associations representing automobile manufacturers, importers and distributors, commenced this action seeking a declaration that the New Car Lemon Law alternative arbitration mechanism, contained in General Business Law § 198-a (k), violates the State Constitution. Specifically, they allege that the statute deprives motor vehicle manufacturers of their right to trial by jury (NY Const, art I, § 2), abridges the Supreme Court's jurisdiction (NY Const, art VI, § 7) and constitutes an unconstitutional delegation of judicial authority (NY Const, art VI, §§ 1, 7). In addition, plaintiffs maintain that the alternative arbitration mechanism violates the New York State Administrative Procedure Act.

I
The original Lemon Law (General Business Law § 198-a) was enacted in 1983 to provide New York consumers greater protection than that afforded by automobile manufacturers' express limited warranties or the Federal Magnuson-Moss Warranty Act (15 USC § 2301 et seq.). Under the statute, when a manufacturer is unable to correct a defect or condition that "substantially impairs" the value of the motor vehicle after a reasonable number of attempts, the manufacturer, at the option of the consumer, is required either to (1) replace the motor vehicle with a comparable motor vehicle or (2) accept return of the vehicle and refund the full purchase price to the consumer (General Business Law § 198-a [c] [1]; 13 NYCRR 300.17 [b]). As originally enacted, the statute did not establish an informal dispute resolution mechanism and consumers were forced to seek these remedies in court or by means of nonbinding informal arbitration programs established by the manufacturers, procedures which often proved costly for the average consumer and resulted in long delays and unfair *180 awards (see generally, Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 198-a, at 311-313). The Legislature responded by enacting General Business Law § 198-a (k), which gives the consumer the option of arbitration, rather than legal proceedings, and compels participation by the manufacturer.[1]
Plaintiffs subsequently commenced this action and, after issue was joined, both parties moved for summary judgment. Supreme Court granted defendants' motion and declared section 198-a (k) constitutional. The Appellate Division modified by declaring a portion of the regulations implementing the statute invalid and otherwise affirmed. Plaintiffs appealed to this court on constitutional grounds (CPLR 5601 [b]) and we now affirm.

II
Plaintiffs contend first that section 198-a (k), which allows the consumer to unilaterally invoke the compulsory arbitration program, violates article I, § 2 of the New York State Constitution by depriving automobile manufacturers of their right to a trial by jury. Section 2 mandates that "[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever" (NY Const, art I, § 2). Thus, an examination of the constitutional sources which previously "guaranteed" a trial by jury is necessary to determine the scope of the present right.
New York's first Constitution, enacted in 1777, guaranteed trial by jury in all cases "in which it hath heretofore been used" (NY Const of 1777 art XLI). The import of that provision was to include in the constitutional guarantee all cases in *181 which a jury trial had been provided under common law (see, Matter of Luria, 63 Misc 2d 675, 676-677; Siegel, NY Prac § 377). Prior to 1777 a jury trial was required if the nature and substance of the relief requested was legal; if the relief demanded was equitable, there was no right to a jury trial (see, Phoenix Mut. Life Ins. Co. v Conway, 11 N.Y.2d 367, 370; Matter of Luria, 63 Misc 2d 675, 682, supra; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4101.02). Subsequent Constitutions, up to and including the Constitution of 1894, adopted the "heretofore been used" clause without change. The effect was to include in the constitutional guarantee those cases to which the right to jury trial had been extended not only at common law before 1777 but also by statute between the 1777 and 1894 Constitutions (Matter of Luria, supra; Siegel, NY Prac § 377). The Constitution of 1938, whose relevant sections remain unchanged today, abandoned the "heretofore been used" language and provided that "[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever" (NY Const of 1938, art I, § 2 [emphasis added]). Consequently, all cases afforded a jury trial under the common law prior to 1777 and all cases to which the Legislature extended a right to a jury trial prior to 1894 come within the present constitutional guarantee in article I, § 2.
Plaintiffs concur in this interpretation of the constitutional provision but contend that they are entitled to a jury trial because the remedies created by the Legislature in the Lemon Law, acceptance of a replacement vehicle or a refund of the full purchase price (General Business Law § 198-a [c] [1]), are analogous to actions triable by jury at common law.
Analysis starts by recognizing that judicial remedies for breach of contract may be characterized as either "legal" or "equitable", depending on whether they were available in the common-law courts or in courts of equity (Farnsworth, Contracts § 12.2). The principal "legal" remedy to enforce a contract is a judgment awarding a sum of money. This is a type of "substitutional" relief "intended to give the promisee something in substitution for the promised performance, as when the court awards a buyer of goods money damages instead of the goods" (id.). The principal "equitable" remedy to enforce a contract is an order requiring specific performance of the contract (id.). This is a type of "specific" relief "intended to produce as nearly as is practicable the same effect that the performance due under a contract would have produced" *182 (Restatement [Second] of Contracts § 357, comment a). The remedy of specific performance allows a court to compel a party to a contract to perform, "if not exactly, at least substantially, what he has undertaken to do" (11 Williston, Contracts § 1418, at 644 [3d ed 1968]).
Turning to the Lemon Law remedies, the replacement remedy provided by the Lemon Law is analogous to specific performance; it is designed to produce, as nearly as practicable under the circumstances, the same performance promised under the contract. The remedy is equitable in nature and would not be subject to a jury trial under common law (see, supra; Independent Church of Realization of Word of God v Board of Assessors, 72 AD2d 554, 555). Accordingly, plaintiffs are not entitled to a jury trial under article I, § 2 of the New York Constitution when the consumer seeks the replacement remedy under General Business Law § 198-a (c) (1).
As for the refund remedy, plaintiffs maintain it is indistinguishable from the legal actions of breach of warranty (see, Emerald Painting v PPG Indus., 99 AD2d 891, 892; Walter Sign Corp. v Municipal St. Sign Co., 25 AD2d 667, 668) and revocation of acceptance and refund of the purchase price (see, Merola v Atlas Lincoln Mercury, 70 AD2d 950; Stream v Sportscar Salon, 91 Misc 2d 99, 109; UCC 2-608). Unlike a "legal" breach of warranty action, however, in which a consumer retains the defective vehicle and seeks damages as compensation for the breach (see, UCC 2-714 [2]), the refund remedy of the Lemon Law permits the consumer to seek rescission to undo the wrong and return to the status quo ante (see, Matter of Teller, 277 App Div 937, 938, amended 277 App Div 1016).
Furthermore, compared to an action for revocation of acceptance under UCC 2-608, in which the buyer first revokes acceptance of the product and then pursues an action to recover the consideration paid, the revocation and cancellation of the contract do not occur prior to litigation under the Lemon Law. The distinction is critical. Actions similar to the action under UCC 2-608 for the return of the purchase price after a party has fully rescinded a contract, actions upon a rescission, are considered actions at law (see, Vail v Reynolds, 118 N.Y. 297, 302). By contrast, actions for rescission to restore the status quo ante are considered actions in equity (id.). They are "not founded upon a rescission, but [are] maintained for a rescission" and the plaintiff offers in his complaint to return *183 what he has received and make tender of it upon trial (Vail v Reynolds, 118 N.Y. 297, 302, supra [emphasis in original]).
The Lemon Law refund remedy is an action seeking a rescission and restoration of the status quo ante, similar to an action for restitution, and is equitable in nature (see, Tull v United States, 481 US 412, 422). It would not have been triable by jury under the common law (Phoenix Mut. Life Ins. Co. v Conway, 11 N.Y.2d 367, 370, supra; JIHL Assocs. v Frank, 107 AD2d 662, 663) and is not entitled to a jury trial under article I, § 2 of the New York Constitution. That incidental fees and charges are recoverable under the Lemon Law refund remedy (see, General Business Law § 198-a [c] [1]) does not compel a contrary conclusion; a party may receive full relief in an equitable action and the awarding of fees as an incident of the equitable relief sought to restore the status quo ante does not disturb the equitable nature of the action (see, Jamaica Sav. Bank v M. S. Investing Co., 274 N.Y. 215, 222-223). Consequential damages, which are recoverable in a legal action for breach of contract, are not recoverable under the statute (see, Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 198-a, at 315).

III
Plaintiffs next contend that the compulsory arbitration mechanism implemented by General Business Law § 198-a (k) abridges the constitutionally guaranteed jurisdiction of the Supreme Court.[2] Article VI, § 7 (a) of the New York Constitution provides that "[t]he supreme court shall have general original jurisdiction in law and equity". Plaintiffs maintain that when a claim may be brought in a court of law, as the Lemon Law claim may at the consumer's option (see, General Business Law § 198-a [f], [h], [j], [l]), the Constitution requires that the Supreme Court be permitted to determine that claim in every instance based on its own de novo review of the law and the facts. Because General Business Law § 198-a (k) limits the Supreme Court's jurisdiction to CPLR article 75 review *184 when a consumer elects compulsory arbitration in the first instance, plaintiffs argue that the Lemon Law provision produces an unconstitutional limitation of the Supreme Court's general original jurisdiction.
Legislation which affects the jurisdiction of the Supreme Court is not necessarily void, however. The Constitution gives the Legislature the "power to alter and regulate the jurisdiction and proceedings in law and in equity" (NY Const, art VI, § 30). It may award jurisdiction to other tribunals,[3] change or abolish common-law causes of action or substitute new remedies (see, Loretto v Teleprompter Manhattan CATV Corp., 58 N.Y.2d 143, 152-153; Montgomery v Daniels, 38 N.Y.2d 41, 57; People ex rel. Swift v Luce, 204 N.Y. 478, 488; Matter of Stilwell, 139 N.Y. 337, 342; People v Honeckman, 125 Misc 2d 1000, 1003).
The Supreme Court has lost no jurisdiction as a result of General Business Law § 198-a (k) because the jurisdiction secured to it by the Constitution does not attach until a claim is made litigable, that is, made the subject of a suit or litigation in a court of law (People ex rel. Swift v Luce, supra). If the consumer chooses to litigate a Lemon Law claim, the Supreme Court has full jurisdiction to adjudicate it. If the consumer chooses arbitration, the claim becomes litigable when either party seeks review of the award. Supreme Court is vested with jurisdiction to review the claim in such proceedings by applying the standards of CPLR article 75 as we have interpreted them (see, Mount St. Mary's Hosp. v Catherwood, 26 N.Y.2d 493, 508 [judicial review of compulsory arbitration pursuant to CPLR art 75 must be premised on adequate evidence in the record]). In enacting the statute, the Legislature has merely created a new cause of action and, as it has done before, awarded one of the litigants the option of choosing arbitration or judicial proceedings in the first instance (see, Executive Law §§ 297-298 [Human Rights Law]). Although the type of adjudication differs when a consumer elects arbitration, the statute does not withhold or abridge the court's "general original jurisdiction" (see, Loretto v Teleprompter Manhattan CATV Corp., 58 N.Y.2d 143, 152-153, supra).
*185 In sum, the constitutional provision is not offended by the statute because once a consumer decides to litigate a claim in court, or either party decides to seek review of the arbitration proceeding, the Supreme Court is vested with jurisdiction to hear the claim.

IV
Plaintiffs further allege that they have a constitutional right to have a court or public officer adjudicate their disputes with consumers (see, NY Const, art VI, §§ 1, 7) and that General Business Law § 198-a (k) abridges that right by unconstitutionally delegating sovereign judicial power to private arbitrators.
The Legislature may, by statute, provide for compulsory references in certain instances provided that it does not violate rights guaranteed to the parties by the Constitution (see, Schaffer v City Bank Farmers Trust Co., 269 N.Y. 336, 339-340; Steck v Colorado Fuel & Iron Co., 142 N.Y. 236, 250-251; Glass v Thompson, 51 AD2d 69, 75-76; Siegel, NY Prac § 379). As we have stated, however, plaintiffs are not entitled to a jury trial for claims arising under the Lemon Law and therefore adjudication by arbitrators in the first instance is permissible under the Constitution (see also, CPLR 4317 [b] [authorizing a reference without consent of the parties]).
The dissent refers to language found in the Mount St. Mary's decision stating that the Legislature may not create ad hoc arbitration tribunals, unlimited by rules of law or evidence, to resolve disputes (Mount St. Mary's Hosp. v Catherwood, 26 N.Y.2d 493, 505, supra). The court continued, however, that a legislative delegation to an arbitration tribunal is constitutional if there are "standards to guide the delegate body" and judicial oversight "to assure that there is a reasonable basis for the action by [it] in compliance with the legislative standards." (Id.)
The General Business Law, and the regulations implementing it, carefully outline standards to guide the arbitrators and authorizes judicial oversight to insure a reasonable basis for the decision. Thus, the statute and rules provide that before undertaking their duties arbitrators must be trained in the required procedural techniques and in the responsibilities they assume under the program (13 NYCRR 300.7 [e]) and *186 their "personal objectivity" must be "insured" (General Business Law § 198-a [k]; see also, 13 NYCRR 300.7 [b], [c]). Each party has the "right" to present its case at the arbitration hearing, "to be in attendance during any presentation made by the other party and to rebut or refute such presentation" (General Business Law § 198-a [k]; see also, 13 NYCRR 300.13). Moreover, the statute spells out the basis for relief and the specific award authorized. The consumer is entitled to relief if, within certain time periods set forth in General Business Law § 198-a (b), the manufacturer is unable to repair or correct any defect or condition which "substantially impairs the value of the motor vehicle to the consumer after a reasonable number of attempts", as defined in the statute (General Business Law § 198-a [c] [1]; [d] [1], [2]). If the consumer prevails, the arbitrator is limited to awarding one of two remedies, acceptance of a replacement vehicle of comparable quality or a refund of the full purchase price, plus certain fees and charges (General Business Law § 198-a [c] [1]; 13 NYCRR 300.17 [b]).
Thus, arbitrators are selected pursuant to detailed standards, the procedures they must follow are specified, the grounds for relief defined and their determinations are subject to judicial review under article 75 of the CPLR to ensure compliance with these standards (General Business Law § 198-a [k]).
The dissent expresses apprehension over the deference afforded to arbitration proceedings generally. However, Lemon Law arbitrators, unlike others, are not given broad powers to interpret substantive case law when rendering a decision (see, dissenting opn, at 192-193). Rather, they are required to follow a specific procedure outlined in the statute and regulations to resolve fact-specific disputes and grant one of only two types of specific relief. Inasmuch as compulsory arbitration is involved, judicial review under CPLR article 75 is broad, requiring that the award be in accord with due process and supported by adequate evidence in the record (see, Caso v Coffey, 41 N.Y.2d 153, 156; Mount St. Mary's Hosp. v Catherwood, 26 N.Y.2d 493, 508, supra). The award must also be rational and satisfy the arbitrary and capricious standards of CPLR article 78 (Caso v Coffey, supra, at 158). If the arbitrator fails to follow the statutory standards, the award should be vacated for exceeding the legislative grant of authority (see, Mount St. Mary's Hosp. v Catherwood, 26 N.Y.2d 493, 506, supra, quoting Matter of Guardian Life Ins. Co. v Bohlinger, 308 N.Y. 174, 183). Finally, the court's coercive power is available to ensure *187 compliance with the arbitrator's decision pursuant to the provisions of CPLR 7514. Given these legislative standards and the courts' power under CPLR article 75, the arbitration proceeding remains within the judicial domain.
Although the dissent's argument proceeds on the premise that something has been taken away from the courts, it concedes the statute creates a new cause of action and a new remedy and does not violate the constitutional provision contained in article VI, § 7 (dissenting opn, at 193). The Legislature has merely created a new limited class of disputes and provided a procedure for resolving them, much in the same way it removed automobile claims from judicial cognizance by the No-Fault Insurance Law (see, Montgomery v Daniels, 38 N.Y.2d 41, 57, supra).[4] Thus, the situation differs materially from that in Matter of Fink v Cole (302 N.Y. 216) in which power, without appropriate standards, was delegated to a private corporation to issue licenses at its discretion. Moreover, the "traits" by which the dissent would identify the judicial function abide in all dispute-resolution bodies; they are not unique to the courts.
Finally, the Legislature has provided for accountability in several ways. It has set forth the procedures to be followed and the elements of the claim entitling a consumer to recovery, defining the arbitration mechanism, the elements of the claim and the relief to be accorded and ensuring that its mandate be followed by providing for the expanded judicial review available in compulsory arbitration.
Accordingly, we find no merit to plaintiff's claim that the statute unconstitutionally abridges the powers of the judiciary or the dissent's argument that it violates fundamental concepts of separation of powers or accountability.

V
Finally, plaintiffs argue that the alternate arbitration mechanism established under the Lemon Law violates the State Administrative Procedure Act by not requiring that the arbitrator's decision include findings of fact, conclusions of *188 law, or reasons for the determination (see, State Administrative Procedure Act § 302 [1]). The State Administrative Procedure Act requirements apply to "agencies" conducting "adjudicatory proceedings" (see, State Administrative Procedure Act §§ 100, 102). General Business Law § 198-a (k) provides that the alternate arbitration procedure "shall be conducted by a professional arbitrator or arbitration firm", presently the American Arbitration Association. This entity is not a "department, board, bureau, commission, division, office, council, committee or officer of the state, or a public benefit corporation or public authority" and therefore is not an "agency" within the meaning of the State Administrative Procedure Act (see, State Administrative Procedure Act § 102 [1]). Accordingly, the State Administrative Procedure Act requirements do not apply to the alternative arbitration mechanism and the standards and procedures to be applied are those set forth in General Business Law § 198-a and the regulations enacted to implement it (13 NYCRR 300.1-300.19).
Plaintiffs claim that the arbitration violates their right to procedural due process, raised for the first time in the Appellate Division, is beyond our review (see, Matter of Barbara C., 64 N.Y.2d 866, 868).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
TITONE, J. (dissenting).
This appeal challenging the compulsory arbitration provisions of the State's Lemon Law (General Business Law § 198-a [k]) raises disturbing questions about when and under what circumstances the Legislature may assign the task of adjudicating civil claims, which is ordinarily reserved to the sovereign, to a private dispute-resolution specialist. Because I cannot agree with the manner in which the majority has resolved this weighty question, I dissent.
At the outset, it is important to identify precisely what the Legislature has done by enacting the compulsory arbitration provisions that are the subject of this appeal (General Business Law § 198-a [k]). First, it has singled out a class of commercial disputes, i.e., consumer breach of warranty claims arising out of automobile sales, and established a mandatory remedy of replacement or repair, provided certain simple procedural steps are taken (General Business Law § 198-a [b], [c]; see, Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 198-a, at 311-315). Next, it has substituted for traditional judicial adjudication *189 a system of compulsory dispute resolution by private arbitrators, who would act under administrative guidelines established by the Attorney-General (General Business Law § 198-a [k]). Significantly, with the exception of a new statutory presumption, the features of a claim under the Lemon Law, and the related defenses, closely resemble those of a conventional breach of warranty claim (see, General Business Law § 198-a [c] [3]; [d]).
Thus, although it is fair to conclude, as the majority has done, that the Lemon Law has technically established what may be characterized as a new, legislatively created cause of action (majority opn, at 184), it cannot be denied that the gist of the legislative effort was to remove this class of disputes from the courts and to place the responsibility for their resolution in the hands of undoubtedly more efficient, and less costly, private dispute-resolution professionals, acting under the supervision of State administrators. As one commentator has observed this obviously well-intended consumer-oriented legislation rests on the premise that "an entirely new compulsory judicial structure can be erected by an elected official to solve certain types of disputes" (Givens, op. cit., at 316). Whether this "breathtaking concept" (id.) passes constitutional muster is a troubling question worthy of close scrutiny.
It has been held that the legislative powers possessed by the sovereign State cannot be delegated to a private entity (Matter of Fink v Cole, 302 N.Y. 216; Builders' Council v City of Yonkers, 106 Misc 2d 700, 703, affd 79 AD2d 696). It would also seem obvious that the inherently coercive authority possessed by the judicial branch of government also cannot be delegated to private entities, who are not accountable to the public either through the elective process or the strictures of the Public Officers Law. Indeed, our citizens' respect for and willingness to submit to the notion of peaceful dispute resolution depends, in large measure, on the fact that in our system the process is conducted not by other private citizens, but rather by public officials who act, at least theoretically, on behalf of the body politic as a whole. Since one of the primary functions of government is to keep the peace by resolving private disputes among citizens, I would reject the notion that this function can simply be legislatively delegated to private dispute-resolution specialists with no public accountability. Yet, that is precisely what the Legislature has done in enacting General Business Law § 198-a (k).
*190 The arbitrators who have been assigned by the Attorney-General, pursuant to the statute, to adjudicate Lemon Law disputes  members of the American Arbitration Association  are private citizens who are not elected, removable or otherwise accountable as public officers. They are not even classifiable as "quasi-governmental" authorities. Indeed, the majority acknowledges as much when it observes that the American Arbitration Association is not a "`department, board, bureau, commission, division, office, council, committee or officer of the state * * *' and therefore is not an `agency' within the meaning of the State Administrative Procedure Act" (majority opn, at 188, quoting State Administrative Procedure Act § 102 [1]). Parenthetically, the majority's analysis on this point highlights the difficulty of permitting delegation of what are ordinarily sovereign functions to private entities: important regulations designed to promote public accountability, such as the State Administrative Procedure Act, are not available.
Furthermore, there can be little doubt that the function General Business Law § 198-a (k) assigns to private arbitrators is judicial in nature. Under the statute, manufacturers are compelled to submit to binding arbitration breach of warranty disputes that differ very little from those that formerly would have been adjudicated in the courts. Arbitrators are empowered to take evidence (13 NYCRR 300.13), to subpoena witnesses and documents (300.10 [e]), and make binding determinations of fact and law (300.17 [i]). These traits are unique characteristics of the sovereign judicial function (see, Hecht v Monaghan, 307 N.Y. 461, 469 ["`(a) judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist'"]; Matter of Metz v Maddox, 189 N.Y. 460, 472 ["(t)he essence of a judicial proceeding is that it decides something and that its decision is conclusive on the parties"]; Matter of Nash v Brooks, 251 App Div 616, 618 ["`(t)o adjudicate upon, and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department'"]).
Contrary to the conclusion of the majority (majority opn, at 185), the judicially approved, long-standing practice of compulsory references to private dispute intermediaries does not furnish legitimizing precedent for what the Legislature has done here. New York has traditionally recognized two types of Referees: Referees "to hear and report" and Referees "to hear and determine" (see, CPLR 4301; Judiciary Law former § 115 *191 [repealed by L 1962, ch 704]; § 117; Family Ct Act § 439; see also, NY Const, art VI, § 25). The former function merely "as an aid to the court" (Matter of 3260 Perry Ave. Realty Corp. [De Burr], 285 App Div 71; accord, Bannon v Bannon, 270 N.Y. 484, 492), while the latter have been permitted even to direct entry of the final appealable judgment (see, e.g., Schuyler v Smith, 51 N.Y. 309, 317). Even in the case of Referees "to hear and determine," however, there is some oversight by the judiciary in the form of an initial, individualized determination by a publicly accountable Judge that the matter is an appropriate one for a binding reference (see, Matter of Seamerlin Operating Co. [Searing  Merlino], 307 N.Y. 407; Bannon v Bannon, supra).[1] Indeed, the constitutionality of a statute authorizing references "to hear and determine" was upheld, in part, because of the existence of that initial judicial participation (Matter of Brock, 245 App Div 5, 10; see generally, Decker v Canzoneri, 256 App Div 68). That saving feature  the initial participation in the litigation of a publicly accountable judicial or quasi-judicial officer  is not present here.
Nor is the problem posed by this delegation of a sovereign function to a private entity answered by the availability of the purportedly heightened standards of judicial review that are applicable to awards resulting from compulsory, as distinguished from voluntary, arbitration. In Mount St. Mary's Hosp. v Catherwood (26 N.Y.2d 493), the court held that, in addition to the extremely limited review ordinarily afforded to other arbitration awards, compulsory arbitration awards must be tested under the somewhat more exacting CPLR article 78 standards ordinarily applied to administrative agency determinations, because those standards are necessary to ensure that the litigant receives at least the minimum consideration that constitutional due process requires. Due process is implicated, of course, because the individual has been required by government to submit to the authority of an arbitrator. While the use of such heightened review may resolve the due process problem posed by compulsory arbitration laws, however, it does not satisfactorily address the entirely separate problem  not addressed in Mount St. Mary's  arising from the delegation *192 of the State's coercive judicial powers to a private entity. Indeed, while the private due process interests of the litigants may be satisfied by the level of review afforded under CPLR article 78, one may well question whether the public's interest in primary decision making by accountable officials may be satisfied by that mechanism.
Moreover, the majority's reliance on the Mount St. Mary's standard for judicial review of compulsory arbitration awards is open to serious question. The Mount St. Mary's court noted that "if, indeed, the Legislature purported to provide ad hoc arbitration tribunals to resolve * * * disputes without limitation to rules of law, it would have acted unconstitutionally", but went on to assert that the constitutional problem is ameliorated by the existence of "standards to guide the delegate body" and adequate judicial oversight "to assure that there is a reasonable basis for the action by [it] in compliance with [those] standards." (26 NY2d, at 505, supra [emphasis supplied].) Although Mount St. Mary's articulated a heightened standard analogous to that applied in article 78 proceedings in order to satisfy constitutional concerns, that standard has noticeably been eroded by this court's recent applications of the standard in the context of no-fault compulsory arbitration appeals.
In Matter of Smith (Firemen's Ins. Co.) (55 N.Y.2d 224, 232), the court summarized the modern standard of compulsory arbitration review emerging from its recent holdings (Cohn v Royal Globe Ins. Co., 49 N.Y.2d 942; Matter of Furstenberg [Aetna Cas. & Sur. Co.], 49 N.Y.2d 757; Matter of Garcia v Federal Ins. Co., 46 N.Y.2d 1040; see also, Matter of McKenna v County of Nassau Off. of County Attorney, 75 AD2d 815, affd 51 N.Y.2d 902) as follows: "[W]e generally will not vacate an arbitrator's award where the error claimed is the incorrect application of a rule of substantive law * * * unless it is so `irrational as to require vacatur'". Even apart from its apparent circularity, this standard is substantially less exacting than that applied in the review of the legal conclusions of administrative agencies (see, e.g., Kurcsics v Merchants Mut. Ins. Co., 49 N.Y.2d 451). Thus, a legitimate and well-founded concern exists about what may be characterized as the excessive judicial deference to the arbitrator's legal, as well as factual, conclusions that the post-Mount St. Mary's case law seems to require. Indeed, this court's assertion in Smith that the recent cases all but preclude judicial review for error of law may well bring the current law on the subject into direct *193 conflict with the Mount St. Mary's court's warning against the legislative establishment of "ad hoc arbitration tribunals to resolve * * * disputes without limitation to the rules of law" (26 NY2d, at 505, supra [emphasis supplied]).[2]
On a more fundamental level, I have grave doubts as to whether this legislation is consistent with the basic tenets of the separation of powers doctrine. I agree with the majority (majority opn, at 183-185) that General Business Law § 198-a (k) does not, as a technical matter, effect an impermissible reduction in the Supreme Court's general original jurisdiction (NY Const, art VI, § 7), since it merely furnishes potential suitors with an alternative forum in which to pursue their claims. However, when examined from a broader, practical perspective, it is apparent that the Legislature has sought to accomplish precisely what the separation of powers doctrine forbids.
While the immediate purpose of the Lemon Law's compulsory arbitration provisions may have been to remedy the defects in the manufacturers' informal dispute-resolution systems, which were adopted in accordance with the Federal Magnuson-Moss Warranty Act and related Federal Trade Commission regulations (15 USC §§ 2310-2312; 16 CFR part 703; see, General Business Law § 198-a [g]), the overriding motivation behind the legislation was the Legislature's dissatisfaction with the cumbersome and often too slow and too expensive judicial mechanisms for resolving this type of dispute (see, Attorney-General's Mem to Governor Re: S 8342-A, Bill Jacket, L 1986, ch 799; see also, Givens, op cit., at 311-316). Accordingly, the Legislature seized upon the solution of simply bypassing the judiciary by authorizing use of private arbitrators and procedures prescribed by the Attorney-General.
The implications of this court's approval of such a solution are no less than monumental. If the Legislature may authorize *194 disputants to bypass the judiciary and choose an adjudicative forum supervised by the executive branch each time it is dissatisfied with the manner in which the judicial branch is handling a particular class of disputes, there would be little left to insulate the judiciary from legislative incursion. In this regard, it is worth emphasizing that the compulsory arbitration mechanism established by the Legislature in connection with the no-fault insurance program is not analogous to the compulsory arbitration system created by the Lemon Law. The controversial no-fault insurance legislation entirely abolished a class of common-law tort claims and replaced it with what resembled an administrative claim system unlike anything that had existed before in the area of vehicular negligence litigation (see, Montgomery v Daniels, 38 N.Y.2d 41). Here, in contrast, the Legislature took what was formerly a traditional, litigable breach of warranty cause of action and, after making certain minor and incidental alterations, made that virtually unchanged cause of action subject to arbitration, rather than judicial resolution, at the behest of the claimant. Thus, unlike the broad-based, multifaceted No-Fault Law, which was aimed primarily at eliminating a particular class of tort actions, this legislation was intended to preserve a class of existing legislatively favored causes of action while at the same time circumventing the judicial system in favor of a private arbitral forum. It seems to me that such legislation squarely contravenes the separation of powers doctrine upon which our system of governmental checks and balances is built and that it ought not be tolerated.
While the intention of the Lemon Law's drafters to facilitate the vindication of consumer claims was, no doubt, commendable, the method they chose  bypassing, rather than improving, the judicial process  represents an unacceptable incursion on the province of the judiciary. As Justice Brandeis observed in a different context: "Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. * * * The greatest dangers to liberty lurk in insidious encroachment by men of * * * well-meaning [intention]" (Olmstead v United States, 277 US 438, 479 [Brandeis, J., dissenting]). Although I am in complete accord with the goal of improving the mechanisms for resolving just consumer claims, I believe that the mechanism the Legislature has chosen is simply too disruptive of the delicate balance governing the relationship among the various *195 branches of government. For that reason, I respectfully dissent.
Order affirmed, with costs.
NOTES
[1] General Business Law § 198-a (k) provides:

"Each consumer shall have the option of submitting any dispute arising under this section upon the payment of a prescribed filing fee to an alternate arbitration mechanism established pursuant to regulations promulgated hereunder by the New York state attorney general. Upon application of the consumer and payment of the filing fee, all manufacturers shall submit to such alternate arbitration.
"Such alternate arbitration shall be conducted by a professional arbitrator or arbitration firm appointed by and under regulations established by the New York state attorney general. Such mechanism shall insure the personal objectivity of its arbitrators and the right of each party to present its case, to be in attendance during any presentation made by the other party and to rebut or refute such presentation. In all other respects, such alternate arbitration mechanism shall be governed by article seventy-five of the civil practice law and rules."
[2] Plaintiffs' contention is not that they possess a due process right to litigate a particular claim in Supreme Court (see, Matter of Colton v Riccobono, 67 N.Y.2d 571, 576 [generally, there is no per se constitutional right of access to the civil courts]), but that the Supreme Court's constitutionally guaranteed jurisdiction may not be curtailed by compelling binding arbitration of the new Lemon Law cause of action at the sole option of the consumer.
[3] Although the Supreme Court has jurisdiction over all claims arising in law or equity (except for claims against the State, where exclusive jurisdiction has been conferred on the New York Court of Claims [see, NY Const, art VI, § 9]), the Legislature may grant concurrent jurisdiction to other courts of limited jurisdiction (see, e.g., Matter of Malloy, 278 N.Y. 429, 432; People v Darling, 50 AD2d 1038; People v Davis, 27 AD2d 299; see generally, Siegel, NY Prac § 12).
[4] Contrary to the dissent's argument (dissenting opn, at 190-191), other compulsory arbitration mechanisms established by the Legislature which do not provide for a first-instance adjudication by a judicial entity have been upheld (see, Mount St. Mary's Hosp. v Catherwood, 26 N.Y.2d 493, 497-498; Country-Wide Ins. Co. v Harnett, 426 F Supp 1030, affd 431 US 934; see, Insurance Law § 5106 [b]).
[1] In Glass v Thompson (51 AD2d 69), where the binding references occurred by virtue of administrative assignment rather than individualized judicial determination, the references were made to individuals who were at least public officers, albeit not constitutionally elected or appointed Judges. Furthermore, this court has not necessarily approved the practice discussed in that case (see, Babigian v Wachtler, 69 N.Y.2d 1012, 1014).
[2] The majority's suggestion (at 186) that "Lemon Law arbitrators * * * are not given broad powers to interpret substantive case law" is puzzling. Although their primary role is to resolve factual disagreements, the disputes placed before them will inevitably give rise to some substantive and legal questions. At the very least, the arbitrators will be called upon to decide how to apply the statutory and regulatory procedures and to construe the statute and regulations in the event of a perceived ambiguity. Moreover, application of the substantive concepts related to this "new" cause of action, such as "substantial impair[ment of] the value of the motor vehicle" (General Business Law § 198-a [c] [1]), unquestionably requires a measure of legal analysis.