*370 OPINION OF THE COURT
Marvin E. Segal, J.
On May 5, 1990, the respondent accepted delivery of a new 1990 Buick Regal automobile manufactured by the petitioner. She alleges that the automobile had electrical defects on the date of delivery, to wit: a seat belt light on the instrument panel which would not turn off and other lights on the instrument panel which blinked on and off. The respondent further alleges that the dealer unsuccessfully attempted to repair this electrical problem on May 7, 1990; October 16, 1990; January 28, 1991; March 21, 1991 and September 4, 1991. The respondent asserts that due to this electrical defect she has had to replace the automobile’s battery several times and two driver’s side electric windows. She contends that the problem still exists.
The respondent alleges that she negotiated with petitioner’s representative, Jane Estes, for almost four years in an effort to resolve the problem. On March 31, 1994, the respondent filed a "Request for Arbitration” form with the Attorney-General’s Lemon Law Arbitration Unit. This request was rejected because it did not include a copy of the bill of sale. The respondent refiled, and her "Request for Arbitration” was accepted by the Attorney-General on April 26, 1994. By letter dated April 26, 1994, the Attorney-General’s Lemon Law Arbitration Unit, by Susan Bieber, advised the respondent in writing that her "Request for Arbitration” had been accepted for processing and was being forwarded to the American Arbitration Association (AAA) to schedule an arbitration hearing. The letter instructed the respondent (in capital letters) "NOT” to send in the $250 filing fee until asked to do so by the AAA.
By letter dated July 5, 1994, the AAA advised both parties that the respondent’s claim has been properly filed in accordance with New York Lemon Law regulations and that an arbitration hearing had been scheduled for August 5, 1994. The letter indicates that the "filing date” of respondent’s claim, the date the AAA received payment of the requisite $250 filing fee from the respondent, was June 27, 1994.
The petitioner now moves, pursuant to CPLR 7503, for an order permanently staying arbitration on the grounds that the respondent’s claim is time barred.
Pursuant to General Business Law § 198-a (j) any action brought under the "Lemon Law” must be commenced within *371 four years of the date of original delivery of the motor vehicle to the consumer. The petitioner contends that as the respondent took delivery of the subject automobile on May 5, 1990 and did not file for arbitration until June 27, 1994, the arbitration proceeding was commenced more than four years after delivery of the vehicle and therefore must be dismissed as time barred. The respondent contends that she filed her claim as of April 26, 1994 and that she is entitled to proceed to arbitration. (The respondent submitted a notarized affidavit wherein she attests to the truth of her submission to the court. It appears she neglected to serve this affidavit upon counsel for the petitioner.) The court has found no precedent regarding this issue and this appears to be a case of first impression.
The history and legislative intent which led to the promulgation of General Business Law § 198-a, the New Car Lemon Law, has been set forth, at length, by the Appellate Division, Second Department, in its decision in Matter of Hynson (American Motors Corp.) (164 AD2d 41, 45-46) as follows:
"In 1983, New York responded to an 'endless stream of consumer complaints’ from purchasers of defective motor vehicles by enacting the New Car Lemon Law (General Business Law § 198-a) which provides consumers with greater protection than that afforded by automobile manufacturers’ express limited warranties or by the Federal Magnuson-Moss Warranty Act (see, Motor Vehicle Mfrs. Assn. v Abrams, 899 F2d 1315, 1317; Motor Vehicle Mfrs. Assn. v State of New York, 75 NY2d 175; Matter of State of New York v Ford Motor Co., 74 NY2d 495). The New Car Lemon Law in essence creates a statutory warranty which obligates manufacturers to repair, without charge, any new motor vehicle which fails to conform to all express warranties during the first 18,000 miles of operation or during the two-year period immediately following the delivery of the vehicle, whichever comes first (see, General Business Law § 198-a [b]; General Motors Corp. v Abrams, 897 F2d 34; Matter of American Motors Sales Corp. v Brown, 152 AD2d 343, supra). In addition, where the manufacturer is unable, after a reasonable number of attempts, to correct a defect or condition that 'substantially impairs’ the value of the motor vehicle, the manufacturer, at the option of the consumer, is required either to replace the motor vehicle with a comparable vehicle, or to accept the return of the vehicle and refund the full purchase price to the consumer *372 (General Business Law § 198-a [c] [1]; see, Motor Vehicle Mfrs. Assn. v State of New York, supra).
"As originally enacted, the New Car Lemon Law did not formally establish an independent mechanism for dispute resolution, and consumers were therefore forced to resort to the courts or to nonbinding informal arbitration programs established by the manufacturers themselves (see, Motor Vehicle Mfrs. Assn. v State of New York, supra). These procedures, however, often proved costly for the consumer and resulted in long delays and unfair awards (see, Motor Vehicle Mfrs. Assn. v State of New York, supra; see generally, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 198-a, at 311). Indeed, the New York State Committee on Consumer Affairs described the original statute as having 'more defects than some of the cars from which consumers were meant to be protected’ (see, Committee on Consumer Affairs approval mem). To alleviate growing consumer dissatisfaction with the informal arbitration programs administered by the manufacturers, the Legislature, in 1986, enacted General Business Law § 198-a (k), which gives an aggrieved consumer the option of compelling the manufacturer to submit to arbitration by an impartial arbitrator selected from a panel established in accordance with regulations promulgated by the New York State Attorney-General (see, Motor Vehicle Mfrs. Assn. v State of New York, supra). In short, consumers now have the option of submitting any dispute arising under the Lemon Law to binding arbitration.”
Under the present law, an aggrieved consumer may seek relief in a court of law (see, General Business Law § 198-a [f], [h], [i], [j]; Motor Vehicle Mfrs. Assn. v State of New York, 75 NY2d 175, 183, supra; see, e.g., Titus v Rolls-Royce Ltd., 174 AD2d 322), or may elect to submit his claim to binding arbitration pursuant to General Business Law § 198-a (k). Pursuant to General Business Law § 198-a (j) an action must be commenced within four years of the date of delivery of the motor vehicle to the consumer (emphasis added). General Business Law § 198-a (k) does not set forth a Statute of Limitations, nor does this subdivision denote any particular activity by an aggrieved consumer which constitutes the commencement of an arbitration proceeding. General Business Law § 198-a (k) provides as follows:
"Each consumer shall have the option of submitting any dispute arising under this section upon the payment of a *373 prescribed fee to an alternate arbitration mechanism established pursuant to regulations promulgated hereunder by the New York state attorney general. Upon application of the consumer and payment of the filing fee, all manufacturers shall submit to such alternate arbitration.
"Such alternate arbitration shall be conducted by a professional arbitrator or arbitration firm appointed by and under regulations established by the New York state attorney general”.
The New York New Car Lemon Law: A Guide For Consumers, prepared by G. Oliver Koppell, Attorney-General, advises aggrieved consumers as follows (at 5): "A consumer has the choice of either participating in an arbitration program or suing the manufacturer directly in court * * * Any action under the lemon law must be commenced within four years of the date of original delivery.” The Guide further sets forth that in order to participate in the New York Lemon Law Arbitration Program: "(a) consumer must complete a 'Request for Arbitration’ form, which may be obtained from any of the Attorney General’s Regional Offices. The completed form must be returned to the Attorney General’s New Car Lemon Law Arbitration Unit. The Attorney General’s Office will review the form to determine whether the consumer’s claim is eligible under the lemon law to be heard by an arbitrator. If accepted the form will be forwarded to the AAA, the program administrator for processing. The AAA will then ask the consumer to pay the required filing fee. Upon receiving the filing fee, the AAA will appoint an arbitrator and schedule a hearing to be held within 35 days”. The guide contains a four-step summary of procedures to be followed by an aggrieved consumer. Step one directs the consumer to return the "Request for Arbitration” form and all necessary supporting documents to the Attorney-General. Step two requires the Attorney-General to determine whether the claim is eligible for arbitration and to forward an eligible claim to the AAA. Pursuant to step three, the AAA requests payment by the consumer of the $250 filing fee. If the fee is not received after two written requests for payment the consumer is advised that the case is marked "Closed”. Step four sets forth that the date the AAA receives the filing fee from the consumer is considered the case filing date. "This date marks the official beginning of the arbitration process.” The AAA must schedule a hearing within 35 days of the filing date. These steps explain the New York Lemon Law Arbitration Program regu *374 lotions (13 NYCRR, ch VIII, part 300) to the aggrieved consumer.
Pursuant to 13 NYCRR 300.4 (d), upon receipt of a consumer’s "Request for Arbitration” form, the Attorney-General must date-stamp and assign a case number to the form. If the Attorney-General determines that the claim is eligible for arbitration, it is accepted by the Attorney-General and the form is forwarded to the AAA.
The Attorney-General must notify the consumer that the claim has been accepted for arbitration and must additionally notify the consumer to pay the filing fee directly to the AAA. 13 NYCRR 300.5 provides that the "filing date” is the date on which the required fee is received by the AAA. The time frame governing all proceedings including hearings, submission of documents and service of requisite notice is measured from the "filing date”.
Nothing in the applicable regulations, or the guide for consumers promulgated by the Attorney-General, or the statute, provides that an aggrieved consumer must commence an arbitration proceeding under section 198-a (k) within four years of the delivery date of the vehicle. Assuming, arguendo, that the four-year period set forth in section 198-a (j) applies not only to actions in a court of law, but also to arbitration proceedings under the New York Lemon Law Arbitration Program, the statute provides no guidance as to what activities on the part of an aggrieved consumer constitute the commencement of an arbitration proceeding.
13 NYCRR 300.5 clearly sets forth that the "filing date” is the date on which the filing fee is received. This regulation does not, however, state that the "filing date” is the date on which the arbitration proceeding is commenced. Rather, the "filing date” starts the clock running on various time constraints regulating the arbitration proceeding.
The respondent herein submitted a "Request for Arbitration” form to the Attorney-General on March 29, 1994, within four years after the delivery of the subject automobile. She complied with 13 NYCRR 300.4 (a), and her claim was accepted for arbitration on April 26, 1994, within the four-year period. She was specifically directed not to pay the required filing fee until a date beyond the four-year period. Again, she complied with the rules, regulations and directives established by the Attorney-General.
Both logic and the interests of justice mandate that this *375 remedial legislation be interpreted so as to hold that a proceeding is commenced under General Business Law § 198-a (k) upon the filing of a "Request for Arbitration” form with the Attorney-General. It is the only act over which the aggrieved consumer exercises any control concerning timeliness. Once such form is filed, the consumer has no control over the length of time it will take the Attorney-General to accept the claim and forward it to the AAA. Further, the consumer has no control over the speed with which the AAA will notify the consumer to forward payment of the filing fee. (Neither the statute nor the regulations place any time requirements on either the Attorney-General or the AAA with respect to these obligations other than to perform them timely.) The interests of justice would not be served by denying an aggrieved consumer the right to arbitrate a claim where arbitration was timely applied for, but where payment of the requisite fee was made beyond the applicable four-year period, due to administrative delays. Further, the Attorney-General only accepts and forwards claims to the AAA which have been found eligible for arbitration. This presumes that the Attorney-General has determined that the claim falls within the statutory period of limitations and that this determination has been made based upon the date the "Request for Arbitration” form has been received date-stamped and assigned a case number by the Attorney-General.
The court holds that the respondent timely sought redress pursuant to General Business Law § 198-a (k). Accordingly, the petition is denied and the parties are directed to proceed to arbitration forthwith.
This issue should be addressed by the Attorney-General and the State Legislature, if necessary, to clarify the time constraints imposed upon aggrieved consumers seeking to enforce their statutory rights by means of binding arbitration.