OPINION OF THE COURT
David Demarest, J.
Respondent sought arbitration under New York’s "Lemon Law” to address complaints he had with a motor home purchased from petitioner. Initially, petitioner submitted an order to show cause and verified petition pursuant to CPLR 7503 (c) seeking a stay of arbitration alleging the arbitration request was not timely. Prior to the return date of that first order to show cause, petitioner, apparently satisfied the request for arbitration was timely made, "withdrew” its petition.
Subsequent to petitioner’s withdrawal of its initial verified petition, it contacted the arbitrator and requested, as a preliminary matter, she hold an immediate hearing limited to the issue of whether a general release earlier given by respondent to petitioner precludes arbitration as a matter of law. In response, an Assistant Attorney-General advised petitioner’s counsel by telephone and, later, by letter that pursuant to Motor Vehicle Mfrs. Assn. v State of New York (75 NY2d 175 [1990]), "a lemon law arbitrator does not have the legal authority to decide such issue.” (Letter of Stephen Mindell to Colleen M. O’Connell, Jan. 29, 1997.) Petitioner submitted a second order to show *244 cause and verified amended petition seeking to stay arbitration based on the general release.
VALIDITY OF AMENDED PETITION
Respondent objects to imposition of the so-called "Verified Amended Petition” since withdrawal of the first petition provides no basis for an amended pleading. Respondent also avers that judicial intervention is inappropriate at this time and should be sought, if at all, subsequent to the arbitration pursuant to CPLR 7509 to 7511. It is argued the court is limited on an application to stay arbitration pursuant to CPLR 7503 (b) to reviewing whether a valid agreement was made or has been complied with or whether the claim sought to be arbitrated is barred by limitation of time under CPLR 7502 (b).
Preliminarily, the court notes that neither its chambers’ file nor the St. Lawrence County Clerk’s file contains a stipulation discontinuing the original special proceeding, nor has it proceeded to judgment. Although petitioner withdrew its initial request for relief thereby vacating the temporary relief granted in the show cause order, the special proceeding remained alive and was amenable to amendment. Thus this application is properly before the court and the substantive issue will be addressed.
JURISDICTION OF SUPREME COURT TO DETERMINE THRESHOLD ISSUE
May this court address the validity of a general release given by a consumer to a motor vehicle dealer prior to compulsory Lemon Law arbitration or must the determination await the outcome of arbitration?
In enacting General Business Law § 198-a (k) the Legislature provided consumers with a choice between litigation, giving Supreme Court full jurisdiction to adjudicate the claim, or arbitration, where the claim becomes litigable only as a review of the arbitration proceeding. (Motor Vehicle Mfrs. Assn. v State of New York, 75 NY2d 175, 184-185 [1990], supra.)
Lemon Law arbitration is compulsory. Accordingly, "judicial review under CPLR article 75 is broad, requiring that the award be in accord with due process and supported by adequate evidence in the record”. (Supra, at 186 [citations omitted].) However, judicial review is limited to determining whether the award is in accord with due process, supported by adequate evidence in the record, and rational — satisfying the arbitrary and capricious standards of CPLR article 78. An *245 arbitrator’s failure to follow statutory standards requires the award be vacated as exceeding the legislative grant of authority. "Finally, the court’s coercive power is available to ensure compliance with the arbitrator’s decision pursuant to the provisions of CPLR 7514. Given [the] legislative standards and the courts’ power under CPLR article 75, the arbitration proceeding remains within the judicial domain.” (Supra, at 186-187.)
Respondent opted for arbitration and in so doing vested the arbitrator with the power to hear and determine his claim and, potentially, award acceptance of a replacement vehicle of comparable quality or a refund of the full purchase price, plus certain fees and charges. (General Business Law § 198-a [c] [1]; 13 NYCRR 300.16 [b].) "Lemon Law arbitrators, unlike others, are not given broad powers to interpret substantive, case law when rendering a decision * * * [but] are required to follow a specific procedure outlined in the statute and regulations to resolve fact-specific disputes and grant one of only two types of specific relief.” (Motor Vehicle Mfrs. Assn. v State of New York, supra, at 186.) It is clear that consideration by the arbitrator of the effect of respondents’ release is beyond the legislative grant of authority.
CPLR 7503 (b) provides a basis for staying arbitration. CPLR 7509 provides a mechanism for having the arbitrator modify an award while CPLR 7511 permits an application to the court to vacate or modify an award. These statutes do not address the issue presently before us. Petitioner asserts the issue should be decided prior to the arbitration since a determination the release has effect would eliminate, entirely, the arbitration and conserve the parties’ resources. On the other hand, respondent claims petitioner is afforded remedies only upon conclusion of the arbitration and a ruling on the release would, necessarily, involve the merits of the arbitration.
The statutory provision pertaining to vacating or modifying an award (CPLR 7511) enumerates the court’s power to review — limiting it to overseeing the arbitrator’s proper discharge of her duties. It does not include review of an arbitrator’s declination to address an issue such as the effect of a release based on lack of statutory authority. Upon an application to stay arbitration (CPLR 7503 [b]), however, the court may address threshold issues respecting arbitrability. This application seeks answer to just that question — is there a controversy which may properly be arbitrated?
Enactment of the Lemon Law was intended to afford an expeditious resolution for all involved. Requiring this issue be *246 addressed by the court postarbitration is antithetical to the intent of the law resulting in needless and protracted litigation. I find, therefore, the effect, if any, of the release is properly before the court.
EFFECT OF THE GENERAL RELEASE
A release is a jural act of high significance. It is well established that a valid release which is clear and unambiguous on its face and is knowingly and voluntarily entered into will be enforced as a private agreement between parties. Accordingly, the traditional bases for setting aside written agreements such as duress, illegality, fraud, or mutual mistake must be established; otherwise, the release stands. (K3 Equip. Corp. v Kintner, 233 AD2d 556 [3d Dept 1996].) Releases are contracts which, unless their language is ambiguous, must be interpreted to give effect to the parties’ intent as indicated by the language employed. (Murray-Gardner Mgt. v Iroquois Gas Transmission Sys., 229 AD2d 852 [3d Dept 1996].) The general release, in pertinent part, states: "Know that Richard DiSanto and Joan DiSanto as Releasor in consideration of the sum of One Thousand One Hundred Dollars ($1,100.00) received from Gulf Stream Coach, Inc. as Releasee, receipt of which is hereby acknowledged, releases and discharges the said Gulf Stream Coach, Inc. * * * of and from any and all liability arising from operational defects associated with the 1992 Sun Voyager owned by Richard DiSanto and Joan DiSanto”. It was signed by the respondent on June 23, 1994, and the $1,100 check, dated July 7,1994, was negotiated on or about August 22,1994.
Both parties cite Mangini v McClurg (24 NY2d 556 [1969]) in support of their respective positions. It is respondent’s position Mangini does not preclude a plaintiff from suing for injuries unknown at the time of the signing of the release but based on the same factual circumstances. To this end respondent argues he was unable to know of latent defects which surfaced subsequent to the signed release. Petitioner alleges the problems cited within respondent’s request for arbitration (brakes malfunctioning and heat/air conditioner malfunctions) were the same problems which prompted the execution of the 1994 release as evidenced by their then-counsel’s letters to Gulf Stream as well as the dates noted in their arbitration request. Specifically, the "Heat/Air Conditioner Malfunctions” listed in the arbitration request enumerates problems spanning from April 10, 1993 through April 12, 1994, predating the general release. Further, the "Brakes Malfunctioning” listed *247 in the arbitration request details problems dating from February 22, 1994 through July 26, 1996, and was specifically addressed by respondent’s previous counsel in letters which, ultimately, gave rise to the parties’ compromise.
It is clear these problems were known prior to the signing of the release and the additional malfunctions itemized in the respondent’s request to arbitrate constituted "the consequence, future course, or sequelae of a known injury” (Mangini v McClurg, supra, at 564) foreclosing arbitration.
While the Lemon Law affords consumers certain rights, those rights may be waived. An effective general release forecloses litigation in Supreme Court and its effect on arbitration should be no different. Permitting a disgruntled consumer who chooses arbitration over litigation to escape the effect of a proper release would be improper. Pursuant to the parties’ signed general release, respondent voluntarily, and under no apparent constraint by petitioner, abrogated his rights to compulsory arbitration. Petitioner’s application to stay the arbitration pursuant to New York CPLR 7503 (b) is granted on the ground that arbitration is barred by the general release.