In the Matter of AMERICAN MOTORS SALES CORPORATION, Respondent, v LEON W. BROWN, Appellant, and ROBERT ABRAMS, as Attorney-General of the State of New York, Intervenor-Appellant.

Second Department, December 13, 1989

APPEARANCES OF COUNSEL

*Leon W. Brown,* appellant *pro se.* (Relying on brief filed by Attorney-General.)

*Robert Abrams, Attorney-General (Deborah I. Volberg* and *Robert F. Roach* of counsel), intervenor-appellant *pro se.*

*Herzfeld & Rubin, P. C. (Herbert Rubin* and *David B. Hamm* of counsel), for respondent.

## OPINION OF THE COURT

MOLLEN, P. J.

The primary issue presented by this appeal is whether an automobile purchased by a consumer for personal use from an automobile dealer, which at the time of purchase had an odometer reading of approximately 5,600 miles, was less than two years old, and was covered by a manufacturer's warranty, is protected by the provisions of the New Car Lemon Law (General Business Law § 198-a). The arbitrator in the case at bar answered this question in the affirmative and rendered an award in favor of the purchaser. We disagree and, accordingly, affirm the Supreme Court's judgment which vacated the arbitration award.

The underlying facts of this proceeding are essentially undisputed by the parties. On or about December 6, 1985, Leon W. Brown purchased a 1985 Renault Sport Wagon from an authorized dealer of the petitioner American Motors Sales Corporation (hereinafter AMSC) for approximately $9,000. At the time of purchase, the vehicle, which was covered by a manufacturer's warranty, had been driven for approximately 5,644 miles. Sometime after the purchase, Brown began to experience problems, *inter alia,* with the vehicle's transmission, brakes, heater and air conditioner. Despite several repair attempts by AMSC's dealer, the vehicle's problems were not corrected.

Thereafter, on or about February 29, 1987, Brown filed a request for compulsory arbitration under the provisions of the New Car Lemon Law (General Business Law § 198-a [k]) which had become effective one month earlier (L 1986, ch 799, § 4, eff Jan. 1, 1987). Brown sought a full refund of the purchase price of the car. At the time Brown requested arbitration, the vehicle had been driven for 17,898 miles. Following a hearing, the arbitrator rendered an award in Brown's favor in the sum of $8,439. Notably, the arbitrator did not take into account the mileage deduction formula for the mileage over 12,000 miles as required by General Business Law § 198-a (a) (4); (c) (1).

AMSC instituted the instant proceeding pursuant to CPLR article 75 seeking to vacate the arbitration award on the basis that the arbitrator exceeded his authority in rendering the award. AMSC argued, in the first instance, that Brown did not purchase a "new motor vehicle" and, thus, Brown was not entitled to seek compulsory arbitration of his claim under the New Car Lemon Law (General Business Law § 198-a [k]). Rather, AMSC contended that the vehicle in question constituted a "used motor vehicle" within the meaning of General Business Law § 198-b (a) (2), commonly referred to as the Used Car Lemon Law, which, at that time, did not contain a compulsory arbitration provision.* In any event, even assuming that the car constituted a "new motor vehicle", AMSC asserted that since Brown purchased the vehicle approximately three years before General Business Law § 198-a (k) became effective, Brown did not qualify for compulsory arbitration. Thus, AMSC took the position that the arbitrator exceeded his authority in rendering the award in Brown's favor. AMSC also maintained that, regardless of the status of Brown's vehicle, the arbitrator's award exceeded the statutory requisites since the defects complained of either developed two years after the date of delivery or they did not "substantially impair the value of the motor vehicle" (General Business Law § 198-a [b], [c] [1]). Furthermore, AMSC asserted that, at the very least, the arbitration award should be modified by taking into account the mileage on Brown's vehicle in excess of 12,000 miles as required by General Business Law § 198-a (a) (4); (c) (1). Finally, AMSC argued that General Business Law § 198-a was unconstitutional.

---

* The Used Car Lemon Law has been amended effective January 1, 1990 (L 1989, ch 609) to provide for compulsory arbitration of disputes thereunder.

Brown opposed the petition and set forth several affirmative defenses and counterclaimed, *inter alia,* to recover reasonable attorneys fees pursuant to General Business Law § 198-a *(l).* Thereafter, the parties entered into a stipulation consenting to the intervention of the Attorney-General as a party to the proceeding in view of the fact that AMSC challenged the constitutionality of the New Car Lemon Law.

The Supreme Court granted the petition and vacated the arbitrator's award on the basis that the arbitrator lacked jurisdiction to proceed in this matter. The court concluded that Brown's vehicle fell within the description of a "used motor vehicle" under General Business Law § 198-b and, thus, Brown could not avail himself of the compulsory arbitration provision under General Business Law § 198-a. We agree.

■ A preliminary issue which has been raised by AMSC concerns the Attorney-General's status in this appeal. AMSC notes, at the outset, that while it challenged the constitutionality of General Business Law § 198-a at the Supreme Court, Westchester County, that court did not reach the issue and it has not been raised on appeal. Thus, AMSC asserts that the Attorney-General is no longer a proper party to this proceeding under Executive Law § 71. Additionally, AMSC asserts that the Attorney-General does not constitute an "aggrieved party" within the meaning of CPLR 5511 and thus does not have standing to prosecute this appeal. Because the Supreme Court determined the matter without the need to reach the constitutional issue, the Attorney-General was not aggrieved by the order from which he has appealed. However, Brown, who clearly qualifies as an aggrieved party under CPLR 5511, filed a timely notice of appeal from the Supreme Court's judgment and, with the Attorney-General's consent, has notified this court that he has adopted the Attorney-General's brief as his own. Thus, Brown's cross motion for leave to adopt the note of issue, brief and record on appeal which have been filed by the Attorney-General is granted. The Attorney-General has also cross-moved for an order granting it permission to proceed as *amicus curiae* in this appeal. That motion is also granted herewith.

Turning to the merits of the appeal, CPLR 7511 (b) provides in pertinent part,

"1. [An arbitration] award shall be vacated on the application of a party * * * if the court finds that the rights of that party were prejudiced by * * *

"(iii) an arbitrator, or agency or person making the award exceeded his power".

It has been recognized that "CPLR 7511 (subd. [b]), in authorizing review of whether the arbitrator has exceeded his power, by necessary logical extension and without distortion of its literal terms includes review in the case of compulsory arbitration (but only in such case) of whether the award is supported by evidence or other basis in reason, as may be appropriate, and appearing in the record" *(Mount St. Mary's Hosp. v Catherwood,* 26 NY2d 493, 508; *see, Matter of Furstenberg [Aetna Cas. & Sur. Co.—Allstate Ins. Co.],* 49 NY2d 757; *Rose v Travelers Ins. Co.,* 96 AD2d 551). Applying this standard of review to the case at bar, we conclude, in accordance with the Supreme Court, that the arbitrator exceeded his authority in rendering the award in Brown's favor.

The legislative intent of the New Car Lemon Law, which became effective September 1, 1983, is to protect consumers who purchase or lease a "new motor vehicle" for personal or household use and experience difficulties with the operation of the vehicle which substantially impair its value. To this end, the New Car Lemon Law provides, in essence, that if a "new motor vehicle" does not conform to all express warranties during the first 18,000 miles of operation or during the two-year period following the delivery of the vehicle, whichever comes first, the consumer, during that period, shall report the nonconformity, defect or condition to the manufacturer, its agent or its authorized dealer (General Business Law § 198-a [b]). The vehicle shall be replaced with a comparable vehicle or a refund shall be paid to the consumer if the dealer is unable to repair the defect after a reasonable number of attempts (General Business Law § 198-a [c] [1]; [d] [1], [2]). A consumer will not be able to recover under the statute if the defect, nonconformity or condition does not substantially impair the value of the vehicle or if it is the result of abuse, neglect or unauthorized modifications or alterations to the motor vehicle (General Business Law § 198-a [c] [3] [i], [ii]). Subdivision (k) of the statute, which became effective January 1, 1987, provides an aggrieved consumer of a defective new motor vehicle with the option of submitting any dispute arising under the statute to compulsory arbitration. Notably, the New Car Lemon Law does not include a definition of a "new motor vehicle". The statute, however, defines "consumer" as follows: "the purchaser, other than for purposes of

resale, or the lessee of a motor vehicle normally used for personal, family, or household purposes and subject to a manufacturer's express warranty, any person to whom such motor vehicle is transferred during the duration of an express warranty applicable to such motor vehicle, and any other person entitled by the terms of such warranty to enforce the obligations of the warranty" (General Business Law § 198-a [a] [1]).

Although Brown arguably qualifies as a "consumer" within the definition of the statute, our review requires a more detailed analysis and comparison between the New Car Lemon Law and the Used Car Lemon Law (General Business Law § 198-b) which became effective November 1, 1984 (L 1984, ch 645, § 2) and which provides statutory protection to qualified consumers who purchase or lease used motor vehicles for more than $1,500 which have defects that substantially impair their value. The Used Car Lemon Law, in pertinent part, provides that no dealer shall sell or lease a used motor vehicle to a consumer without providing a written warranty which shall at a minimum cover (1) used motor vehicles with 36,000 miles or less for at least 60 days or 3,000 miles, whichever occurs first, and (2) used motor vehicles with more than 36,000 miles for a period of at least 30 days or 1,000 miles, whichever occurs first (General Business Law § 198-b [b] [1] [a], [b], as amended by L 1989, ch 444). Significantly, the term "used motor vehicle" is defined in the statute as "a motor vehicle, excluding motorcycles, motor homes and off-road vehicles, *which has been driven more than the limited use necessary in moving or road testing a new vehicle prior to delivery*" (General Business Law § 198-b [a] [2] [emphasis added]). A "consumer" for purposes of the Used Car Lemon Law, *inter alia,* is a "purchaser, other than for purposes of resale, or the lessee, of a used motor vehicle normally used for personal, family, or household purposes and subject to a warranty" (General Business Law § 198-b [a] [1], as amended by L 1989, ch 444). Of particular significance to the case at bar is the fact that the Used Car Lemon Law does not currently have a provision, similar to the New Car Lemon Law, which provides consumers with the option of compulsory arbitration to settle disputes arising under the statute. As indicated *supra,* however, the Used Car Lemon Law has been amended effective January 1, 1990, to include a compulsory arbitration provision similar to the New Car Lemon Law (L 1989, ch 609), thus manifesting a legislative intent to extend the right to

compulsory arbitration to owners of cars which come within the definition of "used" cars under General Obligations Law § 198-b.

■ The primary consideration for the courts in interpreting a statute is to ascertain the legislative intent from the literal reading of the statute itself or of all statutes relating to the general subject matter (McKinney's Cons Laws of NY, Book 1, Statutes § 92; *Delaware County Elec. Coop. v Power Auth.,* 96 AD2d 154, *affd* 62 NY2d 877). Thus, the courts are required to harmonize statutes with each other as well as with the over-all legislative intent in an effort to provide a logical and unstrained interpretation to each *(see, People v Newman,* 32 NY2d 379, *cert denied* 414 US 1163; McKinney's Cons Laws of NY, Book 1, Statutes § 98). A literal reading of the relevant provisions of the New and Used Car Lemon Laws leads to the logical conclusion that while Brown may fit within the term "consumer" as defined by the New Car Lemon Law (General Business Law § 198-a [a] [1]), the vehicle which he purchased was clearly not a "new" car for the purpose of that statute. In fact, the vehicle in question falls squarely within the defini-tion of a "used motor vehicle" since it had been driven, prior to its purchase, for "more than the limited use necessary in moving or road testing a new vehicle prior to delivery" (General Business Law § 198-b [a] [2]). Moreover, as noted by the Supreme Court, the vehicle in question does not qualify as a "new motor vehicle" within the meaning of Vehicle and Traffic Law article 17-A, known as the "Franchised Motor Vehicle Dealer Act". That statute defines a new motor vehicle as "a vehicle sold or transferred by a manufacturer, distribu-tor or dealer, *which has not been placed in consumer use or used as a demonstrator"* (Vehicle and Traffic Law § 462 [11] [emphasis added]). Finally, it is significant that the car invoice for Brown's vehicle stated that the vehicle he was purchasing was "used".

We acknowledge that several trial courts, in addressing claims similar to that presented herein, have determined that purchasers of dealer demonstrator motor vehicles, which have been driven more than that necessary to road test or deliver the cars, are entitled to coverage under the New Car Lemon Law *(see, General Motors Corp. v Cotton,* Sup Ct, Westchester County, June 19, 1987, Marbach, J.; *Matter of Dente v World-wide Volkswagen Corp.,* Sup Ct, Nassau County, July 15, 1988, McCabe, J.). In those cases, the trial courts concluded, at the outset, that the persons purchasing the demonstrator vehicles

fit the description of "consumer[s]" within the meaning of the New Car Lemon Law (General Business Law § 198-a [a] [1]). These courts also found that the New Car Lemon Law is preeminent over the Used Car Lemon Law by reason of the following Used Car Lemon Law provisions:

"If the warranty provided for in section one hundred ninety-eight-a of this chapter is in effect at the time of the sale or lease of the used motor vehicle, then the warranty specified in this section shall be required only for the period of time, if any, between the expiration of such section one hundred ninety-eight-a warranty and the period specified in paragraph one of this subdivision * * *

"Nothing in this section shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law" (General Business Law § 198-b [b] [4]; [d] [2], as amended by L 1989, ch 444).

The courts in *General Motors Corp. v Cotton (supra),* and *Matter of Dente v Worldwide Volkswagen Corp. (supra),* found that the above-quoted statutory provisions were intended to provide New Car Lemon Law protection to vehicles covered by a manufacturer's warranty, which, when purchased, were less than two years old and had mileage less than 18,000 miles but more than that necessary to road test or deliver a new car *(see also, Matter of Subaru of Am. [McKelvey],* 141 Misc 2d 41 [arbitrator did not exceed his authority in finding that the motor vehicle, which when purchased had been driven 5,089 miles, was a "new" motor vehicle]).

The difficulty with this rationale is that it ignores the plain and unequivocal definition of a "used motor vehicle" (General Business Law § 198-b [a] [2]) and is inherently contradictory since it would result in certain "used motor vehicles" being treated as "new motor vehicles". This approach, which is also urged by Brown and the Attorney-General, would require this court to disregard the precise and explicit language of the statute and apply the provisions of the New Car Lemon Law to vehicles which undeniably fall within the definition of "used motor vehicles" under the Used Car Lemon Law. Notably, a thorough examination of the legislative history reveals that this interpretation of the New and Used Car Lemon Laws is not supported by the legislative bill jackets or the extensive legislative history regarding these statutes. Moreover, by focusing solely on the statutory definition of a "consumer" within the meaning of the New Car Lemon Law (General

Business Law § 198-a [a] [1]), to the exclusion of other relevant statutory provisions, this approach fails to comply with the well-established rule of statutory construction which requires courts to harmonize the various provisions of the relevant statutes in order to reach a rational result *(see, People v Newman,* 32 NY2d 379, *supra;* McKinney's Cons Laws of NY, Book 1, Statutes § 98). A reading of the two statutes herein clearly indicates that the New Car Lemon Law applies to individuals who fit within the statutory definition of a "consumer" *and* who purchase a "new motor vehicle". In fact, the recent amendment to General Obligations Law § 198-b extending the right to compulsory arbitration to owners of "used motor vehicles" reflects a legislative recognition that the New Car Lemon Law does not encompass "used motor vehicles". Accordingly, in view of the fact that Brown's vehicle falls squarely within the statutory definition of a "used motor vehicle" under the Used Car Lemon Law (General Business Law § 198-b [a] [2]), it is clear that he does not qualify for protection under the New Car Lemon Law.

Thus, we agree with the Supreme Court's determination that the arbitrator herein exceeded his authority in rendering an award in Brown's favor since Brown was not entitled to compulsory arbitration under the New Car Lemon Law *(see,* General Business Law § 198-a [k]). The arbitrator's conclusion that Brown's vehicle was a "new motor vehicle" rather than a "used motor vehicle" was not "supported by the evidence or other basis in reason" *(Mount St. Mary's Hosp. v Catherwood,* 26 NY2d 493, 508, *supra).*

In view of the foregoing, we do not reach the issue of whether Brown qualified as a "consumer" within the meaning of the New Car Lemon Law (General Business Law § 198-a [a] [1]) notwithstanding the fact that he did not purchase the vehicle directly from the original consumer but rather from a dealer who purchased it for purposes of resale; nor is it necessary to determine whether the compulsory arbitration provision of the New Car Lemon Law (General Business Law § 198-a [k]) applies retroactively to new motor vehicles which were purchased prior to the effective date of that provision.

Accordingly, the judgment under review is affirmed, without costs or disbursements, Renewed Motion No. 3703 by the petitioner AMSC to dismiss the appeal of the Attorney-General is granted, Cross Motion No. 3705 by the Attorney-General for leave to file an *amicus curiae* brief on the appeal of Leon W. Brown is granted, and Cross Motion No. 3704 by

Leon W. Brown to adopt the note of issue, brief, and record on appeal filed by the Attorney-General is granted.

SULLIVAN, J. (concurring in part and dissenting in part). Inasmuch as I do not share the majority's view that Leon Brown is precluded from securing the protections afforded by General Business Law § 198-a (commonly referred to as the "New Car Lemon Law"), I vote to reverse the judgment and to remit the matter to the Supreme Court, Westchester County, for further proceedings consistent herewith.

I note my complete agreement with the position of my colleagues regarding the three motions involving the Attorney-General's participation in this appeal. However, I do not believe that Brown should be denied the benefits of General Business Law § 198-a merely by reason of the fact that the automobile which he purchased falls within the definition of a "used motor vehicle" as set forth in General Business Law § 198-b (the Used Car Lemon Law). The majority adopts the conclusion of the Supreme Court in this case by reading General Business Law §§ 198-a and 198-b together and by reasoning that an automobile owner cannot seek the protections of the former statute unless he qualifies as a "consumer" thereunder and purchases a "new motor vehicle" as that term is defined in Vehicle and Traffic Law § 462 (11). In my view, this narrow interpretation of the relevant statutory provisions is at odds with both the plain and literal language of General Business Law § 198-a and the clear legislative intent to protect consumers which underlies it.

Our Court of Appeals has recently characterized the consumer protection purpose of General Business Law § 198-a as a matter of "important public policy" (Matter of State of New York v Ford Motor Co., 74 NY2d 495, 501). Accordingly, "[w]e are obligated to insure faithfulness to the protections afforded by the statute so that our rulings do not add jurisprudential insult to the consumer injury sustained by the purchase[r] of a defective and unsatisfactory product" (Matter of State of New York v Ford Motor Co., supra, at 501).

Turning to the merits of this case, it is a familiar principle of statutory construction that "[o]ur cardinal function in interpreting a statute should be to 'attempt to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used' (Doctors Council v New York City Employees' Retirement Sys., 71 NY2d

669, 674-675, quoting *Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205, 208)" *(Matter of State of New York v Ford Motor Co., supra,* at 500). Although referred to in common parlance as the New Car Lemon Law, General Business Law § 198-a is actually entitled "Warranties". Consonant with its title, it essentially defines the "consumers" who come under the umbrella of its protections as purchasers of motor vehicles which are normally used for personal purposes and which are "subject to a manufacturer's express warranty" (General Business Law § 198-a [a] [1]). Significantly, a "consumer" may also be "any person to whom such motor vehicle is transferred during the duration of an express warranty applicable to such motor vehicle" (General Business Law § 198-a [a] [1]). Hence, the statute contemplates that a motor vehicle subject to its provisions may have several owners over the course of its first two years or 18,000 miles. It is clear that Brown is a "consumer" under the statute, as he purchased the subject automobile, and it was transferred to him for personal use during a period when the manufacturer's express warranty was in effect. Moreover, it is undisputed that the vehicle was less than two years old and had an odometer reading of less than 18,000 miles at the time when Brown reported the defects complained of to the manufacturer. In my view, Brown was not required to fulfill any further criteria in order to enforce his rights under General Business Law § 198-a.

It is true, as the majority notes, that General Business Law § 198-a (b) makes reference to the term "new motor vehicle" in providing, in part, as follows: "[i]f a new motor vehicle does not conform to all express warranties during the first eighteen thousand miles of operation or during the period of two years following the date of original delivery of the motor vehicle to such consumer, whichever is the earlier date, the consumer shall during such period report the nonconformity, defect or condition to the manufacturer, its agent or its authorized dealer * * * [who in turn] shall correct said nonconformity, defect or condition at no charge to the consumer". The majority also accurately notes that the statute does not contain a definition of the term "new motor vehicle". However, it does define the term "motor vehicle" in relevant part as "a motor vehicle excluding motorcycles and off-road vehicles, which is sold and registered in this state" (General Business Law § 198-a [a] [2]). Hence, it logically follows that a "new motor vehicle" (i.e., a vehicle which comes under the purview of General Business Law § 198-a) is one purchased by or transferred to a

consumer for personal use during the term of the manufacturer's express warranty and which develops problems during the first two years or 18,000 miles, whichever occurs earlier. Indeed, as long as the vehicle is subject to the manufacturer's express warranty and both is less than two years old and has been driven less than 18,000 miles, the age or mileage of the vehicle is irrelevant with regard to the application of the protections of General Business Law § 198-a to the consumer. The relevant inquiry is not whether the vehicle is a "new car" in the colloquial sense, but whether the aggrieved purchaser fulfills the definitional requirements of a "consumer" under General Business Law § 198-a (a) (1) so as to be entitled to the benefits of the statute (see, *General Motors Corp. v Cotton,* Sup Ct, Westchester County, June 19, 1987, Marbach, J.; *Matter of Dente v Worldwide Volkswagen Corp.,* Sup Ct, Nassau County, July 15, 1988, McCabe, J.). Inasmuch as Brown is a person "entitled by the terms of [the manufacturer's express] warranty to enforce the obligations of the warranty" (General Business Law § 198-a [a] [1]), the plain meaning of the statutory language demonstrates that he qualifies for the protections of the statute.

The majority reaches a contrary result by reasoning that the automobile in this case falls within the definition of a "used motor vehicle" as set forth in General Business Law § 198-b (i.e., the "Used Car Lemon Law"). Indeed it does, for there is no doubt that Brown's car is "a motor vehicle * * * which has been driven more than the limited use necessary in moving or road testing a new vehicle prior to delivery" (General Business Law § 198-b [a] [2]). However, it does not follow that Brown is precluded from enforcing his rights under General Business Law § 198-a merely because his vehicle also meets the criteria for a "used motor vehicle" under the Used Car Lemon Law. Simply put, there is no language in either statute which prevents a consumer from seeking the benefits of General Business Law § 198-a, including compulsory arbitration pursuant to General Business Law § 198-a (k), on the ground that the automobile satisfies the definition of a "used motor vehicle". Rather, the opposite is true, inasmuch as the Used Car Lemon Law expressly contemplates that a car which conforms to the definition of a "used motor vehicle" under its provisions may nevertheless also be subject to a manufacturer's warranty, and thereby be protected under the provisions of General Business Law § 198-a: "[i]f the warranty provided for in section one hundred ninety-eight-a of this

chapter is in effect at the time of the sale of the used motor vehicle, then the warranty specified in this section shall be required only for the period of time, if any, between the expiration of such section one hundred ninety-eight-a warranty and the period specified in paragraph one of this subdivision" (General Business Law § 198-b [b] [4]). Moreover, the Used Car Lemon Law also expressly recognizes that other consumer protection legislation may be applicable to a vehicle which comes under its provisions, for it reads in part: "[n]othing in this section shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law" (General Business Law § 198-b [d] [2]). Additionally, the so-called New Car Lemon Law contains language which supports the foregoing conclusion, as it includes among the "consumers" entitled to its protections "any person to whom such motor vehicle is transferred during the duration of [a manufacturer's] express warranty applicable to such motor vehicle" (General Business Law § 198-a [a] [1]). It stands to reason that a subsequent transferee of a vehicle will receive it in a "used" condition within the meaning of the Used Car Lemon Law (i.e., driven more than is required for moving or road testing it prior to delivery by the dealer). Nevertheless, General Business Law § 198-a (a) (1) unequivocally provides that as long as the manufacturer's express warranty is still in effect and the vehicle is less than two years old and has traveled less than 18,000 miles, the subsequent transferee will be able to enforce the full panoply of consumer rights afforded by that statute.

Accordingly, I cannot agree that General Business Law §§ 198-a and 198-b are, as the majority suggests, mutually exclusive consumer protection laws. Rather, they are complementary statutory provisions intended to expand the avenues of redress for consumers who are burdened with chronically defective automobiles. In my view, the majority's adoption of the Supreme Court's conclusion to the contrary renders the above-cited statutory provisions meaningless and creates a conflict between the two statutes when, as in this case, a vehicle satisfies the definitional requirements of both enactments. This result appears to be inconsistent with the very principle of statutory construction upon which the majority relies—to wit, that the courts are required to harmonize statutes which deal with the same general subject matter.

Similarly, I find unpersuasive the majority's resort to the definition of the term "new motor vehicle" set forth in Vehicle

and Traffic Law § 462 (11) to support its view. While this statutory provision is certainly instructive, it comprises part of Vehicle and Traffic Law article 17-A (the Franchised Motor Vehicle Dealer Act) and apparently bears no direct relationship to the consumer protection statutes discussed herein. Indeed, the relevance of the Franchised Motor Vehicle Act's provisions to this case is highly questionable in view of Vehicle and Traffic Law § 468, which provides that nothing contained in the act shall be construed to limit or abridge the rights of consumers, inasmuch as the purpose of Vehicle and Traffic Law article 17-A is only "to provide for the settlement and/or determination of disputes under the franchised motor vehicle dealer act as between franchisors and franchised motor vehicle dealers as defined herein".

Two remaining issues raised by AMSC require brief discussion. The first of these is AMSC's claim that Brown cannot qualify as a "consumer" within the purview of General Business Law § 198-a because he apparently purchased his vehicle from a dealer who in turn purchased it not for personal, family or household purposes, but for the purpose of reselling it. This chain of custody argument is without merit, as the statute contains no requirement that *each and every* owner of a vehicle must use it for personal purposes as a condition precedent for coverage under General Business Law § 198-a, nor may such an additional criterion be engrafted onto the statute at the mere whim of AMSC. Secondly, AMSC maintains that Brown was not entitled to avail himself of the compulsory arbitration remedy provided in General Business Law § 198-a (k), inasmuch as he purchased his vehicle prior to the effective date of that provision. Again, there is no language in the statute to support such a conclusion, and it is clear that Brown was entitled to enforce the manufacturer's express warranty via General Business Law § 198-a as of that effective date *(see generally, Laiosa v Camelot AMC/Jeep,* 113 AD2d 145). Moreover, the remedial nature of this consumer protection statute supports its retroactive application.

In view of the foregoing, I conclude that Brown is entitled to the protections afforded by General Business Law § 198-a, inasmuch as he purchased for personal use a vehicle which came within the age and mileage requirements of that statute and which was covered by the manufacturer's express warranty. It is my view that this interpretation of the relevant statutory provisions comports with both the plain and unambiguous language of the statute itself and with the important

consumer protection policy which prompted its enactment. Accordingly, there is a rational basis for the arbitrator's award, and it cannot be said that the arbitrator exceeded his authority in this case *(see, Matter of Subaru of Am. [McKelvey],* 141 Misc 2d 41). However, while I find that reversal is required, the matter should be remitted to the Supreme Court, Westchester County, for consideration of the parties' additional claims—to wit, AMSC's contentions that the defects complained of did not substantially impair the value of the vehicle and that the arbitrator failed to follow the mileage deduction formula of General Business Law § 198-a (a) (4), and the affirmative defenses and counterclaims asserted in Brown's answer.

In conclusion, I vote to grant Renewed Motion No. 3703, Cross Motion No. 3704 and Cross Motion No. 3705, to reverse the judgment appealed from, and to remit the matter to the Supreme Court for further proceedings consistent herewith.

MANGANO, SPATT and ROSENBLATT, JJ., concur with MOLLEN, P. J.; SULLIVAN, J., concurs in part and dissents in part in a separate opinion.

Ordered that the judgment is affirmed, without costs or disbursements; and it is further,

Ordered that Renewed Motion No. 3703 by the petitioner American Motors Sales Corporation to dismiss the appeal of the Attorney-General is granted; and it is further,

Ordered that Cross Motion No. 3705 by the Attorney-General for leave to file an *amicus curiae* brief on the appeal of Leon W. Brown is granted; and it is further,

Ordered that Cross Motion No. 3704 by Leon W. Brown for leave to adopt the note of issue, brief and record on appeal filed by the Attorney-General as his own, is granted.