In the Matter of the Arbitration between ROBERT HYNSON, Respondent, and AMERICAN MOTORS SALES CORPORATION, Appellant. CHRYSLER CORPORATION, Respondent; ROBERT ABRAMS, as Attorney-General of the State of New York, Intervenor.

Second Department, October 29, 1990

## APPEARANCES OF COUNSEL

*Herzfeld & Rubin, P. C. (Herbert Rubin, David B. Hamm* and *Noreen M. Giusti* of counsel), for appellant.

*Bellavia & Kassel (Leonard A. Bellavia* of counsel), for respondent.

## OPINION OF THE COURT

EIBER, J.

◼ We are called upon to determine an issue left unanswered in the case of *Matter of American Motors Sales Corp. v Brown* (152 AD2d 343): whether the compulsory arbitration provision of the New Car Lemon Law (General Business Law § 198-a [k]) applies to new motor vehicles purchased prior to its effective date of January 1, 1987. For the reasons which follow, we conclude that the petitioner in this case is one of the class of consumers entitled to invoke the benefits of the compulsory arbitration provision, and that the Supreme Court properly confirmed that portion of the arbitration award which determined that the petitioner qualified for relief under the statute.

I

At the "hub" of this controversy is a new Jeep Cherokee which the petitioner Robert Hynson purchased on June 28, 1984, for the sum of $17,186. At the time of purchase, the vehicle was protected by a five-year, 50,000 mile warranty. Hynson had driven his new jeep just 12 miles when he experienced mechanical problems with the vehicle, which he promptly reported to the seller, an authorized American Motors Sales Corporation (hereinafter AMSC) dealer. These mechanical difficulties persisted, necessitating more than four repairs to the jeep's transmission. As a result, the vehicle was out of service for a total of 36 days during its first two years of operation. Despite these mechanical problems, the petitioner had driven the jeep some 24,908 miles when, on April 10, 1987, he made a request for arbitration pursuant to the compulsory arbitration provision of the New Car Lemon Law, which had taken effect four months earlier (L 1986, ch 799, § 4, eff Jan. 1, 1987). The New Car Lemon Law provides that consumers who succeed in establishing their entitlement to relief under the statute have the option of either receiving a refund of their purchase price or a comparable replacement vehicle (General Business Law § 198-a [c] [1]). In completing his application for arbitration, however, the petitioner requested a "new only" "comparable" replacement vehicle. The matter proceeded to arbitration, and a hearing was conducted

on May 27, 1987. Following the hearing, the arbitrator found that the petitioner qualified for relief under the New Car Lemon Law, and was entitled to a replacement vehicle which was to be "new, comparable to that which he purchased originally".

One week later, AMSC sent the arbitrator a mailgram requesting that she clarify the award, in view of the fact that it had been unable to locate a new 1984 vehicle. The arbitrator, in response, amended the award by directing the manufacturer to "provide the consumer with a *new* car of whatever year it is able. The decision in no way limited the replacement to its 1984 stock". The arbitrator further directed the petitioner to pay the difference in sales tax between that which he paid for his 1984 "lemon", and that due and owing on any replacement vehicle.

By letter dated September 3, 1987, AMSC sought to convince the arbitrator that modification of the award was necessary upon the ground that the refund or replacement remedies of the New Car Lemon Law were exclusive, and that it had no statutory obligation to replace the petitioner's substantially used jeep with a new vehicle. On November 20, 1987, the arbitrator denied AMSC's request and upheld the amended award, concluding that there was an "apparent acquiescence" by AMSC to the measure of damages requested by the consumer since it had never affirmatively challenged the petitioner's demand for a new vehicle at the arbitration hearing or within a reasonable time thereafter.

Following the issuance of the amended award, AMSC offered the petitioner the option of either a refund of his purchase price, or a 1986 Jeep Laredo with a mileage of 19,000. AMSC, however, adamantly refused to replace his 1984 lemon with a new vehicle. Firmly convinced that he was entitled to a new vehicle, the petitioner commenced the instant proceeding pursuant to CPLR article 75 to confirm the arbitration award. He alleged, in his accompanying petition, that the arbitration award should be confirmed because AMSC had failed to make a timely application to either vacate or modify the award. The petitioner additionally requested attorneys' fees and the imposition of a $500 fine pursuant to General Business Law § 198-a (h), which imposes sanctions upon those who fail to comply with arbitration awards within 30 days after their issuance.

AMSC not only opposed the application for confirmation,

but also cross-moved to vacate the arbitrator's award upon the ground that the compulsory arbitration provision of the New Car Lemon Law could not be retroactively applied to the petitioner's 1984 vehicle. AMSC maintained in the alternative that the award at minimum should be modified because a "new" vehicle could not, as a matter of law, be deemed "comparable" to a substantially used 1984 vehicle. The Supreme Court rejected AMSC's contention that the petitioner was not entitled to invoke the compulsory arbitration provision, concluding that "[e]ven though General Business Law Section 198-a (k) became effective in 1987, petitioner, who bought his vehicle in 1984, is covered by the statute because it was subject to a manufacturer's express warranty". The court further rejected AMSC's contention that the award must be modified, finding that "the papers reveal that [it] had full knowledge of the requested relief and remained silent during the hearing and pre-decision process, although repeatedly given the opportunity to challenge such award, and therefore obviously acquiesced that a new vehicle would be comparable to the subject vehicle". AMSC now appeals.

## II

In 1983, New York responded to an " 'endless stream of consumer complaints' " from purchasers of defective motor vehicles by enacting the New Car Lemon Law (General Business Law § 198-a) which provides consumers with greater protection than that afforded by automobile manufacturers' express limited warranties or by the Federal Magnuson-Moss Warranty Act (see, Motor Vehicle Mfrs. Assn. v Abrams, 899 F2d 1315, 1317; Motor Vehicle Mfrs. Assn. v State of New York, 75 NY2d 175; Matter of State of New York v Ford Motor Co., 74 NY2d 495). The New Car Lemon Law in essence creates a statutory warranty which obligates manufacturers to repair, without charge, any new motor vehicle which fails to conform to all express warranties during the first 18,000 miles of operation or during the two-year period immediately following the delivery of the vehicle, whichever comes first (see, General Business Law § 198-a [b]; General Motors Corp. v Abrams, 897 F2d 34; Matter of American Motors Sales Corp. v Brown, 152 AD2d 343, supra). In addition, where the manufacturer is unable, after a reasonable number of attempts, to correct a defect or condition that "substantially impairs" the value of the motor vehicle, the manufacturer, at the option of the consumer, is required either to replace the motor vehicle

with a comparable vehicle, or to accept the return of the vehicle and refund the full purchase price to the consumer (General Business Law § 198-a [c] [1]; *see, Motor Vehicle Mfrs. Assn. v State of New York, supra).*

As originally enacted, the New Car Lemon Law did not formally establish an independent mechanism for dispute resolution, and consumers were therefore forced to resort to the courts or to nonbinding informal arbitration programs established by the manufacturers themselves *(see, Motor Vehicle Mfrs. Assn. v State of New York, supra).* These procedures, however, often proved costly for the consumer and resulted in long delays and unfair awards *(see, Motor Vehicle Mfrs. Assn. v State of New York, supra; see generally,* Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 198-a, at 311). Indeed, the New York State Committee on Consumer Affairs described the original statute as having "more defects than some of the cars from which consumers were meant to be protected" *(see,* Committee on Consumer Affairs approval mem). To alleviate growing consumer dissatisfaction with the informal arbitration programs administered by the manufacturers, the Legislature, in 1986, enacted General Business Law § 198-a (k), which gives an aggrieved consumer the option of compelling the manufacturer to submit to arbitration by an impartial arbitrator selected from a panel established in accordance with regulations promulgated by the New York State Attorney-General[1] *(see, Motor Vehicle Mfrs. Assn. v State of New York, supra).* In short, consumers now have the option of submitting any dispute arising under the Lemon Law to binding arbitration.

While acknowledging that General Business Law § 198-a (k) requires manufacturers to submit to compulsory arbitration at the purchaser's election, AMSC, relying on general canons of statutory construction, maintains that the arbitration award should nevertheless be vacated because compulsory arbitration is not retroactively available to consumers such as the petitioner who purchased their vehicles prior to January 1, 1987, the effective date of the amendment. The fatal flaw in AMSC's argument is its assumption that the date of purchase is dispositive of an individual's entitlement to seek redress by

---

1. It should be noted that subdivision (k) of General Business Law § 198-a recently withstood a challenge from a trade association representing automobile manufacturers which maintained that the compulsory arbitration provision violated the New York State Constitution *(see, Motor Vehicle Mfrs. Assn. v State of New York,* 75 NY2d 175, 179).

means of compulsory arbitration. General Business Law § 198-a (k) expressly states that "[e]ach *consumer* shall have the option of submitting any dispute arising under this section * * * to * * * arbitration" (emphasis added). Nothing in the statute, however, supports the conclusion that compulsory arbitration is an option available only to those consumers who purchased vehicles after January 1, 1987. Rather, the plain wording of the statute makes clear that it is not the date of purchase, but the individual's status as a consumer which determines whether the benefits of the statute may be invoked.

An additional reason for rejecting AMSC's contention may be found in the Lemon Law's definition of consumer. General Business Law § 198-a (a) (1) expansively defines a "consumer" as: "the purchaser, lessee or transferee, other than for purposes of resale, of a motor vehicle which is used primarily for personal, family or household purposes and *any other person entitled by the terms of the manufacturer's warranty to enforce the obligations of such warranty*" (emphasis supplied). In *Laiosa v Camelot AMC/Jeep* (113 AD2d 145), the Appellate Division, Third Department, awarded relief to aggrieved consumers upon the ground that their warranty was in effect at the time they sought to enforce their rights under the Lemon Law. The court reasoned that the purchasers, whose manufacturer's warranty was in effect at the time of the enactment of the New Car Lemon Law, were included within its protective ambit notwithstanding the fact that they had purchased their vehicle some 10 months before its effective date.[2] The court further observed that "the statute is not in the least bit ambiguous as to the class of persons that it is meant to benefit. This being the case, we are constrained by the plain meaning of the statute to conclude that plaintiffs, who clearly were entitled by the terms of their warranty to enforce that warranty as of the statute's effective date, are entitled to the protection afforded by the statute" *(Laiosa v Camelot AMC/ Jeep, supra,* at 147).

We find that a similar result is warranted here. Contrary to AMSC's contention, the record establishes that the petitioner's

2. Indeed, the Legislature recently amended General Business Law § 198-a (a) (1) to make clear that the definition of "consumer" is intended to include within its parameters any vehicle that was subject to a manufacturer's warranty at the time of original delivery *(see,* L 1990, ch 530; Mindell, *Review of 1989 Consumer Legislation—Part 1,* NYLJ, Aug. 20, 1990, at 1, col 1).

jeep was still protected by an extended manufacturer's warranty at the time he elected to submit his dispute to compulsory arbitration. As a result, the petitioner was entitled to enforce his warranty through the compulsory arbitration provision as of the amendment's effective date.

■ In addition to the foregoing, the remedial nature of the amendment itself militates in favor of extending the statute's benefits to "consumers" who purchased vehicles prior to the availability of compulsory arbitration. While as a general rule, legislation must be construed as prospective only unless the language of the statute, expressly or by implication, requires retroactive application, there is an exception for remedial statutes, which are those intended to correct imperfections in prior law (see, McKinney's Cons Laws of NY, Book 1, Statutes §§ 35, 54, 51; *Matter of Asman v Ambach*, 64 NY2d 989; *Becker v Huss Co.*, 43 NY2d 527; *Matter of City of New York [Long Is. Sound Realty Co.]*, 160 AD2d 696; *Matter of Rey v Pan Am. Cash & Carry Corp.*, 152 AD2d 246, 251; *Coffman v Coffman*, 60 AD2d 181). The legislative history of the amendment at bar clearly indicates that it was enacted as part of the evolving process of making the Lemon Law an effective means of redress for consumers who have purchased chronically defective vehicles. Thus, the statute is unquestionably a remedial statute. Moreover, the compulsory arbitration provision merely gives aggrieved consumers an additional remedy with which to enforce their preexisting rights, and in the absence of language to the contrary, a remedial amendment of this nature should be retroactively applied so as to spread its benefits as widely as possible (see, *Matter of Asman v Ambach, supra; Post v 120 E. End Ave. Corp.*, 62 NY2d 19, 28-29; see also, *Chrysler Motors Corp. v Schachner*, 138 Misc 2d 501, *revd on other grounds* 166 AD2d 683 [decided herewith]).

### III

■ Turning to the issue of the specific relief awarded, while we agree with the Supreme Court's conclusion that the petitioner was entitled to submit this dispute to arbitration, we are nevertheless constrained to modify the award because the arbitrator exceeded her authority in awarding the petitioner a new vehicle. As the Court of Appeals recently noted, Lemon Law arbitrators are "limited to awarding one of two remedies", i.e., a refund of the full purchase price to the consumer, or replacement of the defective vehicle with a "vehicle of

comparable quality" *(Motor Vehicle Mfrs. Assn. v State of New York, supra,* at 186). Despite the seemingly unambiguous nature of the permissible forms of relief, the Appellate Division, First Department, in *Matter of Volvo N. Am. Corp. v DePaola* (156 AD2d 40) was asked to consider whether the statute's replacement option authorized an arbitrator to award a consumer a new vehicle in place of a "lemon" which had been driven more than 47,000 miles. The court held that the phrase "vehicle of comparable quality" encompassed only a "vehicle of the same year and model * * * which has approximately the same mileage as the vehicle being replaced" and did not entitle the consumer to a "new" vehicle *(Matter of Volvo N. Am. Corp. v DePaola, supra,* at 42). This conclusion fully comports with both the plain language of the statute, and with the legislative objective of providing consumers with a replacement vehicle which is of comparable "mileage, model year and value of the vehicle being returned" *(see,* 1983 NY Legis Ann, at 199-200). Any contrary interpretation, as the *DePaola* court suggested, would frustrate the statutory scheme by permitting the consumer to choose between two alternatives which are grossly disproportionate in value—a refund of the original purchase price, minus a mileage deduction where the vehicle has been driven in excess of 12,000 miles, or a brand new vehicle. By failing to follow these statutory guidelines, the arbitrator herein exceeded the powers entrusted to her by the Legislature. Therefore, so much of the award as equated a "comparable" with a "new" vehicle must be vacated *(see, Motor Vehicle Mfrs. Assn. v State of New York, supra; Matter of Volvo N. Am. Corp. v DePaola, supra).*

## IV

Two additional issues raised by AMSC require brief discussion. The first of these is AMSC's claim that the Supreme Court erred in awarding the petitioner attorney's fees because at the time of its judgment, General Business Law § 198-a *(l)* authorized a discretionary award of such fees only to a prevailing "plaintiff". According to AMSC, counsel fees are not available to a "petitioner" who moves to confirm an arbitration award pursuant to CPLR article 75. AMSC's contention, however, is contrary to both the spirit of this consumer protection statute and its legislative history, which indicates that the Lemon Law is intended to " 'authoriz[e] a court to award reasonable attorney's fees to a prevailing *consumer* who sues under the law' " *(see, Matter of General*

*Motors Corp. v Fischer,* 140 Misc 2d 243, 245, relying upon mem for Governor from Robert Abrams, Attorney-General, dated June 23, 1983; *see also, General Motors Corp. v Smaller,* 142 Misc 2d 497, 499-500; *Matter of Conlan v General Motors Corp.,* 137 Misc 2d 244). In order to clarify any ambiguity in the Lemon Law's counsel fee provision, the Legislature in 1988 amended subdivision *(l)* to expressly include prevailing consumers within its parameters (L 1988, ch 489, eff Aug. 1, 1988).[3] Writing in support of the amendment, New York State Attorney-General Robert Abrams noted that the obvious purpose for the inclusion of an attorneys' fee provision in the statute is to make the Lemon Law a meaningful remedy. He observed that "[i]f consumers are denied the opportunity to recover reasonable attorneys' fees in Article 75 proceedings growing out of the program's awards, they may be deterred from pursuing the benefits of arbitration as a realistic alternative to expensive and time-consuming litigation. Ironically, the only way to seek reimbursement of attorneys' fees would be to commence such litigation. The legislative purpose would obviously be frustrated by such a result" *(see,* Attorney-General mem for Governor dated July 21, 1988). Accordingly, AMSC's disingenuous attempt to differentiate between "plaintiffs" and "petitioners" in terms of their ability to recover counsel fees under the Lemon Law must be rejected. The provision of the judgment which awarded the petitioner attorneys' fees cannot be deemed an improvident exercise of discretion.

■ In view of the fact that the award must be modified by limiting the petitioner's relief to a comparable rather than a new vehicle, we find that the imposition of a fine against AMSC pursuant to General Business Law § 198-a (h) was not appropriate in this case *(see, Matter of Dawson [General Motors Corp.],* 158 AD2d 756).

Accordingly, it is ordered that the judgment is modified, on the law, by (1) deleting the first and second decretal paragraphs thereof, and substituting therefor a provision granting that branch of the cross motion which was to vacate the provision of the arbitration award which directed the appellant to provide the petitioner with a "new" vehicle, otherwise denying the cross motion, denying that branch of the petition

---

3. As amended, General Business Law 198-a*(l)* now provides that "[a] court may award reasonable attorney's fees to a prevailing plaintiff *or to a consumer who prevails in any judicial action or proceeding arising out of an arbitration proceeding held pursuant to subdivision (k) of this section"* (emphasis supplied).

which was to confirm so much of the award as directed the appellant to provide the petitioner with the "new" vehicle, and otherwise granting the petition, (2) deleting from the third decretal paragraph thereof both references to the word "new", and (3) deleting the fourth decretal paragraph thereof; as so modified, the judgment is affirmed, without costs or disbursements.

MANGANO, P. J., KUNZEMAN and HARWOOD, JJ., concur.

Ordered that the judgment is modified, on the law, by (1) deleting the first and second decretal paragraphs thereof, and substituting therefor a provision granting that branch of the cross motion which was to vacate the provision of the arbitration award which directed the appellant to provide the petitioner with a "new" vehicle, otherwise denying the cross motion, denying that branch of the petition which was to confirm so much of the award as directed the appellant to provide the petitioner with the "new" vehicle, and otherwise granting the petition; (2) deleting from the third decretal paragraph thereof both references to the word "new", and (3) deleting the fourth decretal paragraph thereof; as so modified, the judgment is affirmed, without costs or disbursements.