◼ LINA NELSON et al., Appellants, v HSBC BANK USA et al., Respondents. [929 NYS2d 259]—

The plaintiffs are four African-American women who worked

at a Brooklyn branch of HSBC Bank USA. They commenced this action in 2003 alleging discrimination in employment on the basis of race in violation of the New York State Human Rights Law (Executive Law § 296) and the New York City Human Rights Law (Administrative Code of City of NY § 8-107). After summary judgment was awarded to the defendants on certain causes of action (*see Nelson v HSBC Bank USA*, 41 AD3d 445 [2007]), the matter went to trial on the causes of action alleging disparate treatment and hostile work environment pursuant to both the New York State Human Rights Law and the New York City Human Rights Law. After trial, the jury found in favor of the defendants on all causes of action and a judgment was entered upon the verdict in favor of the defendants dismissing the complaint. The plaintiffs appeal, and we modify.

The Supreme Court providently exercised its discretion in admitting into evidence the challenged exhibits (*see Matter of Bergstein v Board of Educ., Union Free School Dist. No. 1 of Towns of Ossining, New Castle & Yorktown*, 34 NY2d 318, 324 [1974]). However, an error in the charge necessitates remittal to the Supreme Court, Kings County, for a new trial on the causes of action alleging hostile work environment pursuant to Administrative Code of the City of New York § 8-107.

In 2005 the New York City Council enacted the Local Civil Rights Restoration Act of 2005 (Local Law No. 85 [2005] of City of NY [hereinafter the Restoration Act]), amending the New York City Human Rights Law (Administrative Code of City of NY § 8-101 *et seq*). The express purpose of the law was "to clarify the scope" of the City's Human Rights Law because it was "the sense of the Council that New York City's Human Rights Law has been construed too narrowly to ensure protection of the civil rights of all persons covered by the law" (Local Law No. 85 [2005] of City of NY § 1). The Council sought to "underscore" that the provisions of the City's law are to be construed independently of similar provisions of state and federal human rights laws and declared that interpretations of similarly worded provisions are to be viewed "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise" (Local Law No. 85 [2005] of City of NY § 1).

While there were some other changes, "the core of the measure was its revision of Administrative Code § 8-130, the construction provision of the City HRL" (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 66 [2009]; *see* Gurian, *A Return to Eyes on the Prize: Litigating under the Restored New York*

*City Human Rights Law*, 33 Fordham Urb LJ 255 [2006]). The Administrative Code of the City of New York was amended to state: "The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed" (Administrative Code § 8-130). Indeed, it is now beyond dispute that the provisions of the New York City Human Rights Law must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*Albunio v City of New York*, 16 NY3d 472, 477-478 [2011]).

The legislative history of the 2005 amendments conveys that they were undertaken to correct a perceived failure by courts to appreciate the scope of earlier comprehensive amendments to the City's Human Rights Law in 1991 and to "again underscor[e]" that the protections afforded by the City's law are not to be limited by restrictive interpretations of similarly worded state and federal statutes (Rep of Comm on Gen Welfare on Prop. Int. No. 22-A, at 2 [Aug. 17, 2005]; *see* Local Law No. 39 [1991] of City of NY). The Committee report accompanying the bill stated that it "aim[ed] to ensure construction of the City's human rights law in line with the purposes of fundamental amendments to the law enacted in 1991" (*id.*), and outlined a number of principles to guide courts in construing the law, including that discrimination should not play a role in decisions made by employers, that traditional methods and principles of law enforcement ought to be applied in the civil rights context, and that victims of discrimination suffer serious injuries, for which they ought to receive full compensation (Rep of Comm on Gen Welfare on Prop. Int. No. 22-A, at 2, 5 [Aug. 17, 2005]).

In determining whether statutory enactments should be given retroactive effect, there are two axioms of statutory interpretation. "Amendments are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated. However, remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose" (*Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d 117, 122 [2001] [citation omitted]; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 584 [1998]). These axioms are helpful guideposts, but "the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal" (*Matter of OnBank & Trust Co.*, 90 NY2d 725, 730 [1997]; *see Matter of Duell v Condon*, 84 NY2d 773,

783 [1995]; *Morales v Gross*, 230 AD2d 7, 12 [1997]). Other factors to consider include "whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be" (*Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d at 122).

The Restoration Act does not expressly state that its provisions are to be applied retroactively. However, the Act is remedial in nature. "Remedial statutes are those 'designed to correct imperfections in prior law, by generally giving relief to the aggrieved party' " (*Coffman v Coffman*, 60 AD2d 181, 188 [1977], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 35; *see Wade v Byung Yang Kim*, 250 AD2d 323, 325 [1998]; *Matter of Hynson [American Motors Sales Corp.—Chrysler Corp.]*, 164 AD2d 41, 48 [1990]; *Matter of City of New York [Long Is. Sound Realty Co.]*, 160 AD2d 696 [1990]). The purpose of the Restoration Act was to rewrite unintended judicial interpretations and reaffirm the City Council's judgment about the scope of the preexisting protections of the City's Human Rights Law (*see* Local Law No. 85 [2005] of City of NY § 1; Rep of Comm on Gen Welfare on Prop. Int. No. 22-A, at 2 [Aug. 17, 2005]). The Act clarified what the 1991 amendments "[were] always meant to say and do" (*Brothers v Florence*, 95 NY2d 290, 299 [2000] [internal quotation marks and emphasis omitted]; *see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d at 585; *Matter of OnBank & Trust Co.*, 90 NY2d at 731). Further, the Act took effect immediately, which evinced a sense of urgency (*see* Local Law No. 85 [2005] of City of NY § 7; *Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d at 122).

"The remedial purpose of the amendment would be undermined if it were applied only prospectively" (*Matter of OnBank & Trust Co.*, 90 NY2d at 731). Accordingly, the current liberalized standards of construction applicable to the New York City Human Rights Law should be applied retroactively (*accord Albunio v City of New York*, 16 NY3d 472 [2011]; *Williams v New York City Hous. Auth.*, 61 AD3d at 80; *Sorrenti v City of New York*, 17 Misc 3d 1102[A], 2007 NY Slip Op 51796[U], *6 [2007]; *Yanai v Columbia Univ.*, NYLJ, Aug. 8, 2006, at 26, col 6; *Loeffler v Staten Is. Univ. Hosp.*, 582 F3d 268, 279 n 7 [2009]; *see* Gurian, *A Return to Eyes on the Prize: Litigating under the Restored New York City Human Rights Law*, 33 Fordham Urb LJ 255, 327-330 [2006]) and, therefore, to the extent that our decision in *Barnum v New York City Tr. Auth.* (62 AD3d 736 [2009]) holds to the contrary, it should not be followed.

In *Williams v New York City Hous. Auth.* (61 AD3d 62 [2009]), the Appellate Division, First Department, applied the liberalized standards of construction of the Restoration Act in construing the standards for liability for sexual harassment under the City Human Rights Law (*see* Administrative Code of City of NY § 8-107). State law in this area, mimicking federal law, requires that harassment be "severe or pervasive" to be actionable (*Meritor Savings Bank, FSB v Vinson*, 477 US 57, 67 [1986]; *see Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 310 [2004]). The Court rejected this formulation for the City Human Rights Law, finding that "there is a wide spectrum of harassment cases falling between 'severe or pervasive' on the one hand and a 'merely' offensive utterance on the other" (*Williams v New York City Hous. Auth.*, 61 AD3d at 76). In light of the "uniquely broad and remedial purposes" of the City Human Rights Law (Administrative Code of City of NY § 8-130), the Court concluded that "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability" (*Williams v New York City Hous. Auth.*, 61 AD3d at 76; *see Farrugia v North Shore Univ. Hosp.*, 13 Misc 3d 740, 748-749 [2006]).

The Court noted that this construction was consistent with the principles articulated in the legislative history accompanying the Restoration Act, since it maximizes deterrence, ensures that discrimination plays no role in employment, and recognizes that discrimination violations are, per se, serious injuries (*see Williams v New York City Hous. Auth.*, 61 AD3d at 76-77). The Court concluded that, under the City Human Rights Law, liability for a harassment/hostile work environment claim is proven where a plaintiff proves that he or she was treated less well than other employees because of the relevant characteristic. Recognizing, however, that the broader purposes of the City's law "do not connote an intention that the law operate as a 'general civility code,' " (*id.* at 79, quoting *Oncale v Sundowner Offshore Services, Inc.*, 523 US 75, 81 [1998]), the Court recognized "an affirmative defense whereby defendants can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences" (*Williams v New York City Hous. Auth.*, 61 AD3d at 79-80 [internal quotation marks omitted]). We find the First Department's analysis persuasive and adopt the standard set forth by that Court for liability for causes of action alleging hostile work environment pursuant to the New York City Human Rights Law.

The charge in this case instructed the jury that proof that

unwelcome racial conduct was "severe and pervasive" is an element of a cause of action alleging hostile work environment pursuant to both the State and City Human Rights Laws. This error was not harmless. The jury could have reasonably found that the harassment complained of by the plaintiffs, while not severe and pervasive, constituted more than petty slights and trivial inconveniences. Accordingly, the judgment must be modified and the matter remitted to the Supreme Court, Kings County, for a new trial on the causes of action alleging hostile work environment pursuant to Administrative Code of the City of New York § 8-107. Skelos, J.P., Dickerson, Austin and Cohen, JJ., concur.

---

Motion by the respondents on an appeal from a judgment of the Supreme Court, Kings County, entered March 31, 2009, to strike stated portions of the record on the ground that they contain matter dehors the record. By decision and order on motion of this Court dated August 16, 2010, the motion was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion, and upon the argument of the appeal, it is

Ordered that the motion is granted, and pages 1808-1821 of the record are stricken and have not been considered in the determination of the appeal. Skelos, J.P., Dickerson, Austin and Cohen, JJ., concur.