OPINION OF THE COURT
Lawrence H. Ecker, J.
The decision and order of the court is as follows:
Ordered that plaintiffs motions are denied; and it is further, ordered that defendants’ cross motion is denied.
Introduction
Plaintiff Compass Motors, Inc. is a franchised motor vehicle dealer for defendant Volkswagen Group of America, Inc. (hereinafter Volkswagen Group). Werner Mersch is a regional manager for Volkswagen Group. As part of its dealership agreement, plaintiff agreed to renovate its facilities. Volkswagen Group sent plaintiff a 90-day notice of termination based on plaintiff’s failure to comply with that requirement. Plaintiff commenced this action to challenge the termination. As a fourth cause of action, plaintiff seeks a declaration that the notice of termination was invalid, because Volkswagen Group failed to provide it with 180 days’ notice to cure, as allegedly required by the New York Franchised Motor Vehicle Dealer Act (Vehicle and Traffic Law art 17-A). Plaintiff moves for summary judgment on that cause of action. Defendants cross-move to dismiss the fourth cause of action, arguing that only 90 days’ notice was required. The motion and the cross motion are denied.
 Under the circumstances presented, only 90 days’ notice was required. Thus, plaintiffs motion is denied. However, *285 this does not resolve all of the issues raised in the fourth cause of action as to the validity of the notice of termination. Thus, because defendants failed to demonstrate, prima facie, that none of the remaining grounds have merit, defendants are not entitled to summary judgment dismissing the fourth cause of action.
Factual and Procedural Background
In August 2007, plaintiff Compass Motors, Inc. (formerly known as Middletown Motors, Inc.) entered into a dealership agreement with defendant Volkswagen Group of America, Inc. to operate a Volkswagen dealership in Middletown, New York (plaintiffs exhibit B). As part of the agreement, plaintiff agreed to renovate its facilities pursuant to a Facility Renovation Agreement made exhibit C to the dealership agreement. Pursuant to the Facility Renovation Agreement, plaintiff agreed to renovate its premises to a “minimum Marketplace ‘C’ Level Facility” as set forth in various corporate documents. Requirements included, inter alia, (1) a Volkswagen only showroom with a minimum of 1,800 square feet and three offices, which showcased no less than four new Volkswagen vehicles, and which was used exclusively for new car sales; and (2) a Volkswagen only service area with at least seven work stalls, a minimum of 1,225 square feet of storage for Volkswagen parts, and a separate service write-up area.
The Facility Renovation Agreement set forth a timetable for the design and construction of the renovated facility, which was to be completed by December 1, 2008. Further, the agreement provided:
“If Dealer shall fail to adhere to any timetable or meet any deadline specified in this Addendum, due to delays wholly out of Dealer’s control, and despite Dealer’s best efforts to meet each deadline or adhere to each timetable, then Dealer may petition [Volkswagen Group] for an extension. To do so, Dealer shall, no later than five days prior to any deadline, notify [Volkswagen Group] in writing of the specified reasons for noncompliance and the new date for compliance. [Volkswagen Group] in its sole discretion, may review Dealer’s reasons for failing to meet such deadline, and [Volkswagen Group] in its sole option may accept or disapprove the extension. Regardless of the reason for noncompliance, if Dealer does not timely complete all its undertakings *286 there under, Dealer acknowledges that [Volkswagen Group] would have good cause, under the New York General Law, to terminate this agreement.”
The Facility Renovation Agreement also provided:
“If Dealer shall, without written approval from [Volkswagen Group], fail to comply timely with any provisions of this Addendum, or if Dealer shall fail to comply with any of [Volkswagen Group’s] requirements at the Dealer’s Premises, then Dealer agrees that, regardless of the weight or magnitude of, or reason for, such failure, [Volkswagen Group] may, at its option, terminate the Dealer Agreement of which this Addendum is part, and shall be under no obligation to offer to enter into any subsequent Dealer Agreement with Dealer. Dealer acknowledges that, in that event, [Volkswagen Group] would have good cause for terminating or failing to renew the Dealer Agreement.” (Plaintiffs exhibit B.)
In October 2007, various e-mails passed between plaintiff and representatives of Volkswagen Group concerning the required signage for the dealership under the Facility Renovation Agreement (defendants’ cross motion, exhibit H). This included a request for a change in the same by plaintiff because the required signage needed a variance.
By letter dated April 7, 2008, Volkswagen Group informed plaintiff that it was in violation of its dealership agreement (Oyler affirmation, exhibit 17). Cited violations included that plaintiff had not provided a site survey by December 1, 2007, or a complete set of construction drawings by March 1, 2008, as required by the Facility Renovation Agreement. Further, plaintiff had rated poorly in customer service. Volkswagen Group noted that if plaintiff did not intend to complete its obligations, it should either surrender the dealership or start looking for a buyer.
By e-mail dated April 8, 2008, plaintiff acknowledged the letter (supra) (defendants’ cross motion, exhibit K). Plaintiff noted that, while it was “certainly not satisfied” with the progress it had made, it was working hard within the constraints imposed by the local authorities to satisfy its obligations.
By letter dated May 1, 2008, Volkswagen Group informed plaintiff that it had not provided, as requested, a written plan for fulfilling its obligations under the Facility Renovation Agreement (Oyler affirmation, exhibit 19).
*287 By letter dated May 3, 2008, plaintiff stated that it believed that it was in compliance with the dealership agreement, and that it was discouraged by the hostile manner in which it was being treated by Volkswagen Group (Oyler affirmation, exhibit 30). Plaintiff sought a discussion on how it might proceed in order to achieve success.
By letter dated May 5, 2008, plaintiff complained to Volkswagen Group that, although it was working hard to accomplish its goals, Volkswagen Group was choosing to “routinely chastise” it for its shortcomings rather than help. Plaintiff characterized the parties’ relationship as “difficult from the start” and “combative.” Plaintiff asserted that it had made progress in improving the dealership, and had invested money in technology and the facility. Plaintiff suggested that the parties work together rather than exchange “accusatory correspondence.” (Plaintiffs cross motion, exhibit N.)
By e-mail dated July 2, 2008, Volkswagen Group noted that it was sending plaintiff two Jettas (Oyler affirmation, exhibit 29).
By letter dated July 14, 2008, Volkswagen Group followed up on a meeting held on June 16, 2008 (Oyler affirmation, exhibit 20). The letter noted that plaintiff was in violation of the dealership agreement as to the Facility Renovation Agreement, and that plaintiff had requested an extension of time to fulfill its obligations thereunder. Volkswagen Group stated that it was willing to agree to the extension provided that plaintiff submitted a written, revised time line for completion of the Facility Renovation Agreement.
By letter dated July 28, 2008, plaintiff noted that completion of the Facility Renovation Agreement was difficult because financial markets had tightened and car sales were difficult (defendant’s cross motion, exhibit P). However, plaintiff asserted, despite the same, it had managed to invest over $500,000 in the business, including purchasing an adjacent property and demolishing a dilapidated building thereon. Further, that it replaced the HVAC system at the dealership, and had paved and landscaped. Plaintiff stated that it looked forward to completing all required renovations as soon as market and business conditions permitted.
By letter dated October 14, 2008, Volkswagen Group noted that it was unable to attend a meeting scheduled for that day to discuss (1) plaintiffs loss of its general manager; (2) plaintiffs ranking as 150th out of 150 dealers in the Eastern region, and as 555th out of 568 dealers nationwide; (3) plaintiffs losses of *288 $427,601 through August 2008; and (4) plaintiff’s failure to have renovated its facility. (Oyler affirmation, exhibit 22.)
By letter dated June 5, 2009, defendant notified plaintiff that it was providing it with a “Notice of Termination of Volkswagen Dealer Agreement” pursuant to Vehicle and Traffic Law § 463, based on its failure to comply with the Facility Renovation Agreement (Oyler affirmation, exhibit 18). The letter noted that the deficiencies had been brought up numerous times in correspondence between the parties and at meetings. Consequently, Volkswagen Group stated, the dealership agreement would be terminated effective in 90 days.
By e-mail dated August 26, 2009, plaintiff sought additional vehicle stock (defendants’ cross motion, exhibit T).
By e-mail dated September 10, 2009, plaintiff noted that it was out of the following models: Rabbits, GTIs and Jettas (defendants’ cross motion, exhibit U).
By e-mails dated December 12 and 13, 2009, plaintiff noted that it was out of the following models: Tiguans and Touaregs (defendants’ cross motion, exhibit V).
The Action at Bar
In September 2009, plaintiff commenced this action against Volkswagen Group and Werner Mersch (a regional manager) alleging, inter alia, violations of the Franchised Motor Vehicle Dealer Act (Vehicle and Traffic Law art 17-A) (plaintiff’s motion, exhibit A). As background, plaintiff alleges that, in 2007, it purchased an existing Volkswagen dealership and a Mazda dealership that were operating out of the same facility. Pursuant to the purchase of the Volkswagen dealership, it was obligated to renovate the dealership pursuant to the Facility Renovation Agreement {supra) in accordance with plans Volkswagen Group prepared in 2000. Plaintiff alleges that, after it purchased the dealership, it learned that the prior owner had no intention of acting on the plans, and had done nothing to review or to further the plans. Further, it learned that, although defendants assured them that the plans were in fact feasible and were complete, and that the dealership was essentially a “turn-key” operation, the plans were not feasible due to restrictions on the property, restraints imposed by local authorities, and Volkswagen Group’s unreasonable refusal to work with plaintiff. In addition, plaintiff alleges, Volkswagen Group assured it that it would receive an adequate supply and assortment of vehicles, which were needed to finance the renovations, and that it would *289 be able to earn a credit of up to $300 per vehicle sold. However, plaintiff alleges, Volkswagen Group never provided an adequate supply and assortment of vehicles or the promised credits.
In any event, plaintiff alleges, its current facility satisfies the Facility Renovation Agreement, to wit: it has a vehicle showroom that exceeds 1,800 square feet and which has no less than three offices, and it has a storage area for Volkswagen parts that exceeds 1,255 square feet. Further, plaintiff alleges, its customer satisfaction ratings have risen, and its current sales figures indicate that it is on track to meet contractual sales objectives. In fact, plaintiff alleges, the current sales figures will be the second highest sales figures in the region, despite Volkswagen Group’s failure to provide adequate inventory, which would have allowed even greater sales. Plaintiff alleges that it has expended substantial money renovating its current facility, which now otherwise met all the requirements of the Facility Renovation Agreement. Further, that Volkswagen Group’s stated reasons for seeking to terminate plaintiffs dealership are disingenuous, and that the real reasons have to due with market conditions and currency fluctuations beyond plaintiff’s control, and Volkswagen Group’s desire to do away with dual manufacturer dealerships.
In addition, plaintiff alleges, in June 2008, Volkswagen Group terminated its business performance bonus, under which plaintiff had been earning $300 per vehicle sold, and had contacted plaintiffs staff behind management’s back concerning sales figures, creating suspicion and dissent. By letter dated June 5, 2009 (supra), Volkswagen Group notified plaintiff that its dealership would be terminated for failure to comply with the Facility Renovation Agreement, effective 90 days from the date of the letter. Plaintiff alleges that Volkswagen Group is in violation of the Franchised Motor Vehicle Dealer Act because (1) it failed to supply plaintiff with adequate inventory; and (2) it failed to allocate vehicles fairly among dealers, depriving plaintiff of more popular and more easily sold models. Further, that Volkswagen Group refused to allow plaintiff to vary the required signage, although the required signage was not permitted by local zoning ordinance. Nonetheless, plaintiff alleges, it tried to comply with the renovation plans by hiring an engineer and site planner, and purchasing an adjacent lot and demolishing a dilapidated building thereon. However, plaintiff alleges, the more the Facility Renovation Agreement was studied, the more it became apparent that it was not feasible, particularly as *290 to grading and drainage. Further, it was not in compliance with good and accepted engineering practices or local zoning law. In addition, funding for the Facility Renovation Agreement was hampered by poor inventory and the termination of the business performance bonus (supra).
As its first through third causes of action, plaintiff alleges that Volkswagen Group violated the following sections of the Franchised Motor Vehicle Dealer Act: (1) section 463 (1) (a), by coercing it to accept vehicles it did not order; (2) section 463 (2) (a), by failing to deliver a reasonable quantity of vehicle advertised as available for immediate delivery within a reasonable time; and (3) section 463 (2) (b), by threatening to cancel its dealership agreement. As a fourth cause of action, plaintiff seeks a declaration that Volkswagen Group’s attempt to terminate its dealership agreement was null and void pursuant to section 463 (2) (d) — (a) because it was not for due cause and in good faith; (b) because the renovation was neither reasonable nor necessary, and was in any event impossible to perform; (c) because Volkswagen Group failed to supply plaintiff with an adequate supply and variety of vehicles; (d) because Volkswagen Group refused to honor plaintiffs orders for new vehicles unless it accepted unwanted vehicles; (e) because Volkswagen Group failed to fulfill its obligations under the business performance bonus; and (f) because Volkswagen Group failed to provide plaintiff with 180 days’ notice of termination.
As its fifth through seventh causes of action, plaintiff alleges that Volkswagen Group violated the following sections of the Franchised Motor Vehicle Dealer Act: (1) section 463 (2) (w), by withholding vehicles it was authorized to sell; (2) section 463 (2) (gg), by applying an unreasonable, arbitrary and unfair sales or performance standard in determining compliance with the dealership agreement; and (3) section 466 (1), by imposing an unreasonable restriction on a franchisee — i.e., compelling it to enter into the Facility Renovation Agreement.
As an eighth cause of action, plaintiff alleges that Volkswagen Group breached the dealership agreement.
As a ninth cause of action, plaintiff alleges that Volkswagen Group breached the business performance bonus agreement (supra).
As a tenth cause of action, plaintiff alleges tortious interference with business advantage.
Finally, as an eleventh cause of action, plaintiff alleges that Volkswagen Group breached its fiduciary duties towards it.
*291 Plaintiffs Motion
Plaintiff moves for summary judgment on its fourth cause of action seeking a declaration that Volkswagen Group’s termination letter is null and void. Plaintiff argues that, pursuant to Vehicle and Traffic Law § 463 (2) (e) (3), Volkswagen Group was required to give it 180 days’ notice and opportunity to cure before declaring a default and terminating its dealership agreement. Here, plaintiff asserts, it never received such notice. Thus, it argues, Volkswagen Group cannot demonstrate a condition precedent to termination of the dealership agreement, and the purported notice of termination must be declared null and void.
In further support of its motion, plaintiff submits an affidavit from Thomas Stark, the chairman and a shareholder of plaintiff, who avers that plaintiff never received a 180-day notice to cure.
In opposition to the motion, Volkswagen Group notes that it is not disputed that plaintiff failed to renovate the dealership as agreed in the Facility Renovation Agreement, despite numerous requests and warnings. Volkswagen Group notes, to date, plaintiff had still not complied with the Facility Renovation Agreement, or provided assurances that it would. Regardless, Volkswagen Group argues, the 180-day cure period of Vehicle and Traffic Law § 463 (2) (e) (3) cited by plaintiff is not applicable, as that subparagraph applies to deficiencies in sales and service performance only. Further, Volkswagen Group asserts, it did, in fact, give plaintiff more than 180 days’ notice, as it first notified plaintiff of its failure to satisfy the Facility Renovation Agreement in April 2008, which was some 400 days prior to the termination letter. In any event, Volkswagen Group argues, Vehicle and Traffic Law § 463 (2) (e) (3) did not become effective until January 1, 2009, which is after the dealership agreement at issue. Thus, it does not apply to the agreement. Otherwise, Volkswagen Group asserts, it cannot be genuinely disputed that plaintiff breached the Facility Renovation Agreement by failing to renovate the premises by December 1, 2008, and by failing to meet any of the various interim deadlines set forth therein. Volkswagen Group thus asserts this motion, and this entire action, are mere delay tactics.
In reply, plaintiff argues that Vehicle and Traffic Law § 463 (2) (e) (3) applies to all terminations, not just ones for sales and service breaches. Otherwise, plaintiff asserts, Volkswagen Group did not comply with the statute because none of the correspondence relied upon indicates that a failure to cure will result in termination. Finally, plaintiff argues, because the statute is remedial, it is to be applied retroactively.
*292 Defendants’ Cross Motion
Defendants cross-move for summary judgment dismissing the fourth cause of action. Defendants assert that, even if Vehicle and Traffic Law. § 463 (2) (e) (3) did apply, it terminated plaintiffs dealership agreement for due cause and in good faith for failure to comply with the Facility Renovation Agreement. Defendants argue plaintiff submitted nothing in support of its contention that the termination was pretextual; they note the record is replete with evidence of Volkswagen Group’s efforts to assure plaintiffs compliance with the Facility Renovation Agreement. Finally, Volkswagen Group argues, plaintiff was provided with at least 14 months’ notice to cure.
Plaintiffs “Cross Motion”
Plaintiff “cross moves” for an order granting it summary judgment on its fourth cause of action and denying defendant’s cross motion for summary judgment dismissing that cause of action.*
Analysis
In 1983, the Legislature passed the Franchised Motor Vehicle Dealer Act (Vehicle and Traffic Law art 17-A, as added by L 1983, ch 815) as
“necessary to regulate motor vehicle manufacturers, distributors and factory or distributor representatives and to regulate dealers of motor vehicles doing business in this state in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state.” (Vehicle and Traffic Law § 460.)
Insofar as pleaded by plaintiff, the act provides as follows: Pursuant to section 463:
“1. It shall be unlawful for any franchisor to directly or indirectly coerce or attempt to coerce any franchised motor vehicle dealer:
“(a) To order or accept delivery of any motor vehicle or vehicles . . . which shall not have been voluntarily ordered by said franchised motor vehicle dealer except any such items required by a recall cam *293 paign. . . .
“2. It shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract:
“(a) To refuse to deliver in reasonable quantity and within a reasonable time after receipt of a dealer’s order to any franchised motor vehicle dealer any vehicle covered by such franchise which is publicly advertised by such franchisor to be available for immediate delivery. . . .
“(b) To directly or indirectly coerce or attempt to coerce any franchised motor vehicle dealer to enter into any agreement with such franchisor or officer, agent or other representative thereof, or to do any other act prejudicial to the monetary interests or property rights of said dealer by threatening to cancel any unexpired contractual agreement existing between such franchisor and said dealer. Provided, however, that good faith notice to any franchised motor vehicle dealer of said dealer’s violation of any terms or provisions of such franchise shall not constitute a violation of this article. . . .
“(d) (1) To terminate, cancel or refuse to renew the franchise of any franchised motor vehicle dealer except for due cause, regardless of the terms of the franchise. A franchisor shall notify a franchised motor vehicle dealer, in writing, of its intention to terminate, cancel or refuse to renew the franchise of such dealer at least ninety days before the effective date thereof, stating the specific grounds for such termination, cancellation or refusal to renew. . . . “[(e) (2)] The issues to be determined in an action commenced pursuant to subparagraph one of this paragraph [challenging a termination] are whether the franchisor’s notice of termination was issued with due cause and in good faith. The burden of proof shall be upon the franchisor to prove that due cause and good faith exist. The franchisor shall also have the burden of proving that all portions of its current or proposed sales and service requirements for the protesting franchised new motor vehicle dealer are reasonable.
“The determination of due cause shall be that there exists a material breach by a new motor vehicle dealer of a reasonable and necessary provision of a franchise if the breach is not cured within a reason *294 able time after written notice of the breach has been received from the manufacturer or distributor.”
Further, the statute provides, it shall be unlawful for a franchisor:
“(w) To withhold from a franchised motor vehicle dealer a new motor vehicle product of the same line make which the franchised motor vehicle dealer is authorized to sell under its franchise. . . .
“(gg) To use an unreasonable, arbitrary or unfair sales or other performance standard in determining a franchised motor vehicle dealer’s compliance with a franchise agreement. Before applying any sales, service or other performance standard to a franchised motor vehicle dealer, a franchisor shall communicate the performance standard in writing in a clear and concise manner.” (Vehicle and Traffic Law § 463 [2] [w], [gg].)
Finally, pursuant to section 466 (1):
“It shall be unlawful for a franchisor directly or indirectly to impose unreasonable restrictions on the franchised motor vehicle dealer relative to transfer, sale, right to renew or termination of a franchise, discipline, noncompetition covenants, site-control (whether by sublease, collateral pledge of lease or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights with respect to its franchise or dealership.”
Plaintiff’s Motion
Despite the broad scope and intertwined nature of plaintiffs allegations in the complaint, including those in support of its fourth cause of action challenging the validity of the notice of termination, the presence of three motions, and the voluminous submissions in support and in opposition thereto, plaintiff’s arguments appear to be limited to whether the notice of termination needed to be 90 days or 180 days. This requires little discussion.
Pursuant to section 463 (2) (d) (1) (supra), a notice of termination of a dealership must provide at least 90 days’ notice. Section 463 (2) (e) (3), relied upon by plaintiff, by its plain terms, applies only to notices to correct “dealer sales and service performance deficiencies or breaches.” Here, Volkswagen Group’s notice of termination was based on plaintiffs failure to *295 comply with the Facility Renovation Agreement, not sales and service performance deficiencies or breaches. Thus, section 463 (2) (e) (3) is not applicable. Consequently, plaintiffs motions for summary judgment are denied.
In light of this determination, the issue of whether section 463 (2) (e) (3), enacted effective January 1, 2009, is applicable to this case is academic, and need not and will not be addressed. (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117 [2001]; Nelson v HSBC Bank USA, 87 AD3d 995 [2d Dept 2011].)
Defendant’s Motion
Defendants’ cross motion to dismiss the fourth cause of action is also denied.
As noted supra, plaintiff’s allegations in support of its fourth cause of action are not limited to whether 90 days’ or 180 days’ notice of termination was required. Rather, plaintiff alleges that the notice of termination was invalid for that reason and because it was not for due cause and in good faith. Further, plaintiff alleges, the termination was invalid because the requirement that the dealership be renovated was neither reasonable nor necessary and, in any event, was impossible to perform; because Volkswagen Group failed to supply plaintiff with an adequate supply and mix of vehicles; because Volkswagen Group refused to honor plaintiffs orders for new vehicles unless it accepted unwanted vehicles; and because Volkswagen Group failed to fulfill its obligations under the business performance bonus. Defendants, in effect, failed to proffer any competent evidence in admissible form as to these issues. Rather, in the main, defendants merely argue that plaintiff failed to offer any proof in the support of such allegations. However, at this juncture, the burden is not on plaintiff. Rather, in support of their cross motion, defendants needed to demonstrate a prima facie entitlement to dismissal of the fourth cause of action. (Nash v Port Wash. Union Free School Dist., 83 AD3d 136 [2d Dept 2011].) In addition, the court notes, pursuant to Vehicle and Traffic Law § 463 (2) (e) (2), “[t]he burden of proof shall be upon the franchisor to prove that due cause and good faith exist.” Here, this burden was not met. Consequently, defendants’ cross motion must be denied regardless of the sufficiency of plaintiff’s opposing papers. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]; Currie v Wilhouski, 93 AD3d 816 [2d Dept 2012].)
*296 Accordingly, it is ordered that plaintiffs motions for summary judgment and defendants’ cross motion for summary judgment are denied.

 The papers are mislabeled as a cross motion. The papers merely seek the same relief sought in plaintiffs first motion and oppose defendants’ cross motion.